**UNITED STATES of America,**
**Appellee,**

v.

**John DOE, Defendant–Appellant.**

**Docket Nos. 00–1514(L), 01–1028(Con).**

United States Court of Appeals,
Second Circuit.

Argued: Oct. 22, 2001.

Decided: July 17, 2002.

James Neuman (Richard Jasper, New York City, on brief), for Defendant–Appellant.

Bernadette Miragliotta, Assistant United States Attorney, Eastern District of New York, Brooklyn, NY, for Appellee.

Before: FEINBERG, OAKES, F.I. PARKER, Circuit Judges.

F.I. PARKER, Circuit Judge.

Defendant-appellant John Doe appeals from an order of conviction and sentence entered on July 10, 2000 in the United States District Court for the Eastern District of New York (Sterling Johnson, Jr., *Judge*) following his guilty plea to one count of conspiracy to import cocaine into the United States in violation of 21 U.S.C. § 963. The district court imposed a sentence of 262 months imprisonment, which Doe is currently serving, as well as five years of supervised release and a $100 special assessment. On appeal, Doe challenges (1) whether the government acted in bad faith in deciding not to file a Section 5K1.1 motion pursuant to its plea agreement with Doe; (2) whether Judge Johnson erred in denying Doe's motion for a downward departure; and (3) whether the district court erroneously determined Doe's sentence based on drug quantities not specified in the indictment or found by a jury beyond a reasonable doubt. While the Court has addressed the first two issues in a summary order filed separately from this opinion, it gives the third issue more thorough consideration here. Although we find that Doe's indictment failed to charge drug quantity, we do not correct the error because we do not believe the error affected Doe's substantial rights. We vacate and remand Doe's sentence, however, finding the sentence to be plain error requiring correction. In this case, the imposition of a sentence above the statutory maximum for an offense involving an indeterminate quantity of drugs based on drug quantities not found beyond a reasonable doubt requires correction to avoid unfairness and damage to the integrity and public reputation of judicial proceedings.

**I.**

On July 26, 1996, John Doe was arrested by the United States Customs Service for his involvement in a conspiracy to import and distribute cocaine into the United States. A confidential informant revealed to government agents that Doe had provided pay-offs to an acquaintance who worked as a Customs Inspector at JFK International Airport in Queens, NY, in order to facilitate importation of drugs. Doe was indicted under a two count indictment, Count One of which provided:

*Count One*

On or about and between July 16, 1996 and July 22, 1996, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants . . . , together with others, did knowingly and intentionally conspire to import into the United States from a place outside thereof cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 952(a).

(Title 21, United States Code, Sections 963, 960(a)(1) and 960(b)(1)(B)(ii); Title 18, United States Code, Sections 3551 *et seq.*)

While the indictment did not specify a drug quantity in the text of the first count, one of the code sections listed parenthetically following the text designated the quantity-specific punishment for importation of five kilograms or more of cocaine.[1]

Between August and November 1996, the government held a series of proffer sessions with Doe. During those sessions, Doe revealed his involvement in a scheme to import cocaine, and eventually implicated Albert Camancho, an acquaintance from the Masonic Lodge and a Customs Inspector at JFK international airport, in the plan. These proffer sessions led to the creation of a cooperation agreement between Doe and the government on February 5, 1997. Under the terms of the agreement, Doe agreed to plead guilty to Count One of the indictment and acknowledged that the Count as charged carried certain statutory penalties including:

a. Maximum term of imprisonment: life

 (21 U.S.C. § 960(b)(1)(B)(ii)).

b. Minimum term of imprisonment: 10 years

 (21 U.S.C. § 960(b)(1)(B)(ii)).

c. Minimum supervised release term: 5 years, maximum supervised release term: life . . .

 (21 U.S.C. § 960(b)(1)).

d. Maximum fine: $4,000,000

 (21 U.S.C. § 960(b)(1)).

Doe agreed to the terms of the cooperation agreement including these specified penalties and promised to provide truthful information to the government in exchange for the government's promise to drop the indictment's remaining counts, not to oppose a downward adjustment for acceptance of responsibility, and to file a U.S.S.G. § 5K1.1 motion if Doe complied fully with the agreement.

Doe appeared before Magistrate Judge Joan M. Azrack on March 21, 1997 for formal plea proceedings. During the plea discussions, Doe's counsel affirmed that he had informed Doe of the minimum and maximum penalties to which Doe would be subject under the agreement. Doe acknowledged that he had a right to trial and surrendered his trial rights. Judge Azrack then reviewed the mandatory minimum and potential maximum sentences for Count One with Doe and accepted Doe's allocution as to his role in the importation scheme—namely, insuring that the cocaine could get through customs. Satisfied that

---

1. 21 U.S.C. § 960(b)(1)(B)(ii) provides:
 In the case of a violation of subsection (a) of this section involving—. . .
 (B) 5 kilograms or more of a mixture or substance containing a detectable amount of—. . .
  (ii) cocaine, its salts, optical and geometric isomers, and salts or isomers;

 . . .
 The person committing such violation shall be sentenced to a term of imprisonment of not less than 10 years and not more than life. . . .
 21 U.S.C. § 960(b)(1)(B)(ii).

Doe was acting voluntarily with a complete understanding of his rights, Judge Azrack entered a recommendation that the guilty plea be accepted. At no time was the quantity of drugs involved discussed by either party.

Doe acted as a witness for the government during the subsequent trial of his co-conspirator Albert Camancho. Although the value of his testimony was subsequently debated at length in relation to the government's refusal to enter a § 5K1.1 motion following the Camancho trial, that issue is addressed in a separate summary order and will not be considered here.

The Probation Department prepared a pre-sentence report for Doe on July 25, 1997, recommending that the court find Doe accountable for the importation of 65 kilograms of cocaine, generating a total offense level of 36 and a Guideline range of 188 to 235 months.[2] In June of 1999, after Doe had testified at the Camancho trial, the government submitted a letter requesting, inter alia, that the quantity of drugs considered for sentencing purposes be increased to over 150 kilograms of cocaine and 2 kilograms of heroin (creating a base offense level of 38) based on information Doe provided through his testimony at Camancho's trial, information Doe provided to government agents, and testimony of other witnesses at the Camancho trial. A July 29, 1999 addendum to the PSR incorporated the higher drug quantities and revised the base level recommendation to 38. This alteration created a total offense

level of 39 and a sentencing range of 262–325 months.[3]

The parties appeared for sentencing before the Honorable Sterling Johnson, Jr. on June 26, 2000. After a statement from Doe expressing his regret for his crime; Judge Johnson, apparently adhering to the recommendation of the amended PSR, sentenced Doe to 262 months imprisonment, five years of supervised release, and a $100 special assessment. No mention of, or challenge to, the drug quantities supporting the sentence was made during the sentencing hearing.

## II.

Resolution of Doe's claim that he was sentenced on drug quantities not alleged in the indictment or proven to a jury as required by *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *United States v. Thomas*, 274 F.3d 655 (2d Cir.2001)(in banc), requires this Court to examine both the indictment supporting Doe's conviction and the sentence imposed following his guilty plea.

### A. Standard of Review

■ In *Thomas*, this Court, in banc, concluded "that the failure either to charge drug type and quantity in the indictment or to submit the question of drug type and quantity to the jury is subject to plain error review pursuant to Fed.R.Crim.P. 52(b) when the defendant raised no objection before the District Court." 274 F.3d at 660; *see also United States v. Cotton*,

---

2. The original PSR found the applicable base level to be 36 pursuant to U.S.S.G. § 2D1.1. The PSR then applied a three level increase for Doe's supervisory position and a three level decrease for acceptance of responsibility. Under Criminal History Category I, Doe's projected sentencing range fell at 188–235 months.

3. In addition to increasing drug quantity, the amended PSR also considered Doe as a leader (warranting a 4–level increase) rather than a supervisor (warranting only a 3–level increase). With the three level decrease for acceptance of responsibility, this resulted in a total offense level of 39 which, under Criminal History Category I, gave a 262–325 month sentencing range.

— U.S. ——, 122 S.Ct. 1781, 1785, 152 L.Ed.2d 860 (2002)(applying plain error review to failure to charge drug quantity in indictment). Because Doe did not object to the inclusion of the drug quantities .at sentencing, or, apparently, in response to the government's efforts to amend the PSR, this Court will apply plain error review to Doe's *Apprendi*-based arguments raised for the first time on appeal.[4] To establish plain error, the Court must find (1) an error, (2) that is plain, (3) that affects substantial rights. *See Johnson v. United States*, 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). If an error meets these initial tests, the Court engages in a fourth consideration: whether or not to exercise its discretion to correct the error. *Id.* at 467, 117 S.Ct. 1544. The plain error should be corrected only if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993))(internal quotation marks and citation omitted). With these standards in mind, we consider individually Doe's claims regarding the failure to include in the indictment or prove to a jury the drug quantities used to compute his sentence.

### B. The Indictment

In *Apprendi*, the Supreme Court announced that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120

S.Ct. 2348. In *Thomas*, this Court applied *Apprendi* · to the federal narcotics law, finding that "[a]fter *Apprendi*, drug type and quantity are elements of the offense under 21 U.S.C. § 841 that must be charged in the indictment and submitted to the jury for its finding beyond a reasonable doubt" when they raise a potential penalty above the otherwise applicable statutory maximum. 274 F.3d at 673; *see Cotton*, 122 S.Ct. at 1783 (addressing omission of drug quantity from indictment as *Apprendi* error). To decide whether the combined rulings of *Apprendi* and *Thomas* make reference to drug quantity only through a parenthetical citation to the penalty provision of 21 U.S.C. § 960(b)(1)(B)(ii) an error, this Court must consider (1) whether *Thomas*'s ruling on drug quantity applies beyond the confines of 21 U.S.C. § 841, and (2) whether parenthetical reference to the quantity-based statute under which Doe was sentenced "charged" drug quantity in the indictment. To answer these questions, we examine first the similarity of 21 U.S.C. § 841 to 21 U.S.C. § 960 and then commence our plain error review. ·

### 1. Thomas *applies to 21 U.S.C. § 960*

■ This Court has applied its in banc ruling in *Thomas* primarily to claims, like the claim in *Thomas*, arising under 21 U.S.C. § 841(b). *See, e.g., United States v. Outen*, 286 F.3d 622 (2d Cir.2002); *United States v. McLean*, 287 F.3d 127 (2d Cir. 2002); *United States v. Yu*, 285 F.3d 192 (2d Cir.2002); *United States v. White*, 240 F.3d 127 (2d Cir.2001); *see also Cotton*, 122 S.Ct. at 1785 (reviewing for plain error

---

4. We note that Doe was sentenced on the same day that the Supreme Court issued *Apprendi*. Doe did not, however, raise any objection at sentencing sufficiently related to drug quantity to allow us to find the issue preserved here. Therefore, because his claim was not preserved below, we review for plain error. *See United States v. Randle*, 259 F.3d 319, 321 (5th Cir.2001)(applying plain error review where defendant sentenced on same day the Supreme Court issued the *Apprendi* decision raised *Apprendi* arguments for the first time in certiorari petition).

failure to charge drug quantity in indictment). The structure of 21 U.S.C. § 960, however, mirrors that of § 841 so as to make application of *Thomas* to charges under § 960 only logical. Both § 841 and § 960 operate through two distinct subdivisions—an initial declaration of unlawful acts and a subsequent outline of appropriate penalties. Section 841(a) declares unlawful conduct related to the manufacture and/or distribution of drugs:

> **(a) Unlawful acts**
>
> Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
>
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or
>
> (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

Section 960(a) similarly outlines unlawful acts regarding drug importation:

> **(a) Unlawful acts**
>
> Any person who—
>
> (1) contrary to section 952, 953, or 957 of this title, knowingly or intentionally imports or exports a controlled substance,
>
> (2) contrary to section 955 of this title, knowingly or intentionally brings or possesses on board a vessel, aircraft, or vehicle a controlled substance, or
>
> (3) contrary to section 959 of this title, manufactures, possesses with intent to distribute, or distributes a controlled substance,
>
> shall be punished as provided in subsection (b) of this section.

While the substantive crimes vary between the two provisions, the provisions have parallel structures. More importantly, the penalty provisions that follow in each statute's subsection (b) adhere to practically identical, quantity-based punishment schedules. 21 U.S.C. § 841(b)(1)(A), for instance, punishes any violation of subsection (a) involving 5 kilograms or more of cocaine with 10 years to life in prison and a fine of up to $4,000,000.[5] Likewise, 21 U.S.C. § 960(b)(1)(B) punishes a violation of its subsection (a) involving 5 kilograms or more of cocaine with an identical 10 years to life imprisonment and a fine of up to $4,000,000. The parallel punishment scheme continues at the level of 500 grams of cocaine, punishing violation of either statute's subsection (a) with a prison term of between 5 and 40 years and a fine of up to $2,000,000, *see* 21 U.S.C. § 841(b)(1)(B)(ii)(II); 21 U.S.C. § 960(b)(2)(B)(ii), and continues even where quantity is undetermined, punishing a violation of the statute's substantive subsection (a) for an unquantified amount of drugs with a prison sentence of up to 20 years and a fine up to $1,000,000, *see* 21 U.S.C. § 841(b)(1)(C); 21 U.S.C. § 960(b)(3).[6] Although the statutes employ slightly different numbering systems, the structure of the two statutes, both in their division of substantive prohibitions from penalty provisions and in the allot-

---

**5.** The statutory minimum and maximum sentences increase with demonstration that the crime resulted in serious bodily harm or that the offender had a prior felony conviction. *See* 21 U.S.C. § 841(b)(1)(A); 21 U.S.C. § 960(b)(1).

**6.** We use cocaine quantities to demonstrate the parallel structure of the two statutes' penalty provisions because of the relevance of these provisions to Doe's case. We note, however, that the similarity extends across all types and amounts of drugs with the exception of the number of marihuana plants necessary to trigger punishment under § 841(b)(1)(D) (fifty plants) and § 960(b)(4) (100 plants).

ment of penalties by quantity of narcotics involved, are entirely parallel.[7] In light of the mirror-image nature of the two provisions, we find it appropriate to extend *Thomas's* ruling under § 841, that drug quantity relevant to assigning punishment under subsection (b) greater than the statutory maximum for unquantified offenses is an element of the offense under *Apprendi* that must be charged in the indictment and proven to the jury beyond reasonable doubt, to 21 U.S.C. § 960. We hold that *Thomas* applies to consideration of a sentence imposed under the quantity-specific provisions of § 960(b) as well as under the quantity-based provisions of § 841.

### 2. Was § 960 charged in the indictment?

As previously described, Doe's indictment alleged in the text of Count One a knowing and intentional conspiracy to import cocaine into the United States in violation of 21 U.S.C. § 952(a). The indictment followed this initial charge with a parenthetical noting the provisions under which Doe could face punishment—21 U.S.C. §§ 963, 960(a)(1), and 960(b)(1)(B)(ii)—and the statutory guidelines for imposition of that sentence as to imprisonment, supervised release, and fines—18 U.S.C. § 3551 et seq. The only statute described and cited in the text, 21 U.S.C. § 952(a), provides that "[i]t shall be unlawful to import ... into the United States from any place outside thereof, any controlled substance in schedule I or II."

Beyond exempting certain small quantities of otherwise controlled substances as deemed necessary for "medical, scientific, or other legitimate purposes," 21 U.S.C. § 952(a)(1)-(2), the statute makes no reference to drug quantity. Thus, no quantity-specific provision appears in the text of the indictment. In the attached parenthetical, only 21 U.S.C. § 960(b)(1)(B)(ii), uses quantity to determine the fate of the party convicted for conspiracy to import narcotics.[8] That section provides that the penalty for a violation of § 960(a) in an offense involving 5 or more kilograms of a substance containing cocaine shall be not less than 10 years and not more than life. By contrast, under subsection (b)(3) of § 960, a person convicted of conspiracy to import drugs under § 960(a) for whose crime no drug quantity is established faces a *maximum* sentence of 20 years and no minimum sentence. 21 U.S.C. § 960(b)(3). Thus, if the parenthetical notation in Doe's indictment did not properly "charge" Doe with a particular drug quantity, Doe should have been subject to a sentence of not more than 20 years rather than facing a minimum of 10 years and a maximum of life. Doe's final sentence, 262 months, exceeds the statutory maximum for an unquantified drug offense under § 960(b)(3) by almost two years,[9] creating a potential violation of *Apprendi* and *Thomas* if the parenthetical reference to § 960(b)(1)(B)(ii) did not properly charge drug quantity.

7. The Sentencing Guidelines also give these provisions like treatment. *See* U.S.S.G. § 2D1.1(a) (applying the same base level formula to offenses under § 841(b)(1)(A)-(C) and § 960(b)(1)-(3)).

8. 21 U.S.C. § 963 subjects a person conspiring to commit a defined offense to the "same penalties as those prescribed for the offense, the commission of which was the object of the ... conspiracy," but does not note any quan-

tity requirement. 21 U.S.C. § 960(a) provides that for a substantive offense under § 952 (or, conspiracy to commit such an offense as directed in § 963), a person will be subject to the penalties imposed in 21 U.S.C. § 960(b).

9. A 20 year maximum provides a 240 month sentence. Doe's 262 month sentence, therefore, exceeds this maximum by one year and 10 months.

### a. Inclusion of drug quantity only through a parenthetical reference to § 960(b)(1)(B)(ii) was error.

■ The indictment at issue in *Thomas* alleged only that Thomas and others "did knowingly, willfully and unlawfully combine, conspire, confederate and agree among themselves and with others, to possess with intent to distribute and to distribute a quantity of cocaine, a Schedule II controlled substance and a quantity of cocaine base, also known as 'crack' cocaine, a Schedule II controlled substance, in violation of 21 United States Code, § 841(a)(1). In violation of Title 21, United States Code, § 846." *Thomas*, 274 F.3d at 660. The text of the indictment did not include a specific drug quantity, nor did either of the referenced statutory provisions impose penalties based on findings of specific amounts of drugs. *Id.; see* 21 U.S.C. §§ 841(a)(1), 846. In Doe's case, the indictment, albeit in a parenthetical, specifically referred to the provision punishing importation of 5 kilograms or more of cocaine (21 U.S.C. § 960(b)(1)(B)(ii)). While slightly more instructive than the indictment in *Thomas*, we conclude that under the law of this Circuit, Doe's indictment nevertheless fails to charge drug quantity.

This Circuit has long held that "citation to a statutory section alone is not sufficient to cure a defective indictment that fails to allege all the elements of an offense," *United States v. Hernandez*, 980 F.2d 868, 871 (2d Cir.1992)(citing *United States v. Berlin*, 472 F.2d 1002, 1008 (2d Cir.1973)); *see also United States v. Wright,* 248 F.3d 765, 766 (8th Cir.2001) (per curiam)(finding reference to statute alone likely insufficient to allege substantial bodily harm to victim in carjacking indictment where the Supreme Court had ruled that car-jacking resulting in bodily harm comprised an offense separate from that of simple carjacking); *United States v. Cabrera–Teran,* 168 F.3d 141, 145 (5th Cir.1999)(considering reference to statute insufficient to cure failure to include "arrest" in indictment for illegal reentry); *Chiu v. United States,* No. 01–CV–4418(FB), 2002 WL 537644, at *2 (E.D.N.Y. April 11, 2002)(treating, without discussion, a similar parenthetical notation as a "failure to include the quantity in the indictment" for *Thomas* purposes). This Circuit has allowed a lone statutory citation to charge an element of a crime only when, despite the omission of the element itself from the indictment's text, a reading of the indictment in its entirety allowed inference of the final element. *See Hernandez*, 980 F.2d at 871–72. In *Hernandez*, however, the citation to the statutory provision which included the omitted element, "intent to distribute," appeared in the text of the indictment. *Id.* Furthermore, the language of the indictment, charging knowing and intentional possession of a large amount of heroin, described conduct comprising the offense under the same statutory provision from which the element was omitted. *Id.* Doe's indictment, however, did not omit some aspect of cocaine importation in violation of § 952, the charge discussed and cited in the text. The offense of importation of controlled substances under 21 U.S.C. § 952, unlike the possession offense in *Hernandez*, was complete as charged in the text of Doe's indictment. Instead, Doe's indictment confined to a parenthetical string citation the sole suggestion of the quantity of drugs involved in the offense, an amount that did not alter the physical act of importation with which Doe was charged, but did affect the penalty to which he would be subject for that act. As neither the omitted quantity element of Doe's intended charge, nor the fact that an element was omitted, could be inferred from the text of the indictment—discovery of either required consideration of the subsequent parenthetical and outside resources—we

find this case distinguishable from *Hernandez.*

We recognize that the Seventh Circuit has allowed a statutory reference to charge the drug quantity element of an offense where it believed that, despite the failure to charge quantity in the text of the indictment, the defendant "could not understand th[e] allegation of a year of distribution activity in a large area to involve only minute amounts of cocaine." *See United States v. Westmoreland,* 240 F.3d 618, 634 (7th Cir.2001). As Doe's indictment specified activity only between July 16, 1996 and July 22, 1996, however, we find that unlike the *Westmoreland* defendant, Doe had little reason to assume that the quantity of drugs involved in his offense would be of any certain magnitude or that the indeterminate quantity provisions of § 960(b)(3) would not apply to his case.[10] Thus, we find *Westmoreland's* justification for its inference regarding the missing indictment element inapplicable to this case.

We also note that a few post-*Apprendi* cases have found, on habeas review under 28 U.S.C. § 2255, that where a statutory reference served only to alert a party to a quantity-based drug penalty provision, rather than to describe the substantive conduct supporting the elements of the crime charged, such a reference satisfies *Thomas. See Grajales v. United States,* No. CV 01–7126(RR), 2002 WL 718123, at *5 (E.D.N.Y. March 5, 2002); *Herrera v. United States,* 169 F.Supp.2d 92, 99–100 (E.D.N.Y.2001). We believe, however, that in light of this Circuit's long-standing refusal to allow an element of an offense to be charged by statutory citation alone, especially where, as here, neither the omission of an element, nor the nature of that element can be inferred with certainty

from the text of the indictment, failure to include drug quantity in the indictment other than in a parenthetical string citation was error.

Our conclusion that Doe's indictment did not properly "charge" drug quantity reflects the reasoning supporting *Apprendi* and *Thomas. Apprendi* and *Thomas* made drug quantity an element of an offense where it extends a defendant's sentence beyond the otherwise applicable statutory maximum. *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348; *Thomas,* 274 F.3d at 673. Neither case suggested that this newly identified element could be charged less explicitly than other, traditional offense elements. As we do not read *Thomas* to have created a new class of offense elements, but rather to have identified drug quantity as an element of the offense in cases in which the quantity will raise punishment beyond the otherwise prescribed statutory maximum, we will not treat drug quantity differently than other elements of a charged offense. In this case, where drug quantity was implicated only by a parenthetical reference to the applicable penalty provision, we find the indictment in error.

#### b. The error was plain.

■ Having found error in the indictment's failure to charge drug quantity under the law of this Circuit, we find that error plain. As this Court noted in *Thomas,* "an error is 'plain' if it is 'clear' or 'obvious' at the time of appellate consideration." *Thomas,* 274 F.3d at 667 (quoting *Johnson v. United States,* 520 U.S. 461, 467–68, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)). As *Thomas* established, drug quantity is an element of an offense under 21 U.S.C. § 841 (and, for the reasons dis-

---

**10.** Even had a broader time frame been specified, we question whether time frame alone could convey to a defendant the government's intention to seek punishment for a particular quantity of drugs rather than for an indeterminate amount of drugs.

cussed above, under the parallel provisions of 21 U.S.C. § 960) that, when it raises the penalty above the otherwise applicable statutory maximum, must be charged in the indictment and submitted to a jury for proof beyond reasonable doubt. *Id.* at 673. The omission of a clear charge on drug quantity in the indictment, viewed from today's perspective, is plain error.

### c. The error did not violate Doe's substantive rights.

■ Although we find the inclusion of drug quantity only through a parenthetical citation was plain error, we do not believe that the error substantially affected Doe's substantive rights. Although, as discussed in the previous section, we find parenthetical citation to a quantity provision insufficient to charge drug quantity in light of *Thomas,* we must look to the actual impact of this indictment's flaw on this defendant to decide whether the error violated Doe's substantial rights.

■ Indictments are governed by Federal Rule of Criminal Procedure 7(c)(1). Rule 7(c)(1) provides that an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R.Crim.P. 7(c)(1). This Court has interpreted Rule 7(c)(1) to find sufficient an indictment that, read liberally, informs the defendant of the charges against him. *See United States v. De La Pava,* 268 F.3d 157, 162 (2d Cir.2001); *United States v. Pirro,* 212 F.3d 86, 92–93 (2d Cir.2000). By informing the defendant of the charges he faces, the indictment protects the defendant from double jeopardy and allows the defendant to prepare his defense. *See United States v. Dhinsa,* 243 F.3d 635, 667 (2d Cir.2001); *Pirro,* 212 F.3d at 92.

■ In this case, despite the indictment's insufficiency under *Apprendi* and *Thomas*[11], Doe clearly had notice of the quantity-based penalty provisions to which he was subject. Doe's cooperation agreement with the government identified in an extended format the levels of punishment that would apply to Doe if he pled guilty or was convicted under the indictment. Alongside its designations of the maximum and minimum prison terms, term of supervised release, and potential fine, the agreement explicitly referenced 21 U.S.C. § 960(b)(1)(B)(ii). Doe was advised again of these terms, all dependant on application of the quantity-specific provisions of § 960(b)(1)(B)(ii), in his plea hearing before the magistrate judge. Furthermore, Doe expressly acknowledged 262–327 months as the estimated sentencing guideline range, a range clearly permitting sentencing above the twenty-year maximum for unquantified, § 960(b)(3) offenses. These statements in the cooperation agreement and at the plea hearing, even absent a proper charge in the indictment, assured that prior to entry of his guilty plea, Doe understood that his punishment was not governed by the provision for undetermined quantities of cocaine, but by the more stringent, quantity-based standard noted parenthetically in his indictment. Although at the time of Doe's plea, this Court had not designated drug quantity as an element of the offense where it raised the penalty beyond the otherwise applicable statutory maximum, Doe was well-warned that proof of drug quantity (at least above five kilograms) would have a significant impact on his penalty if convicted. As Doe was alerted to these distinctions repeatedly before entering his guilty plea, we find that the purposes of the indictment, notice and protection from

11. *See also Cotton,* 122 S.Ct. at 1785 (treating as error failure to charge drug quantity in indictment where government conceded that such failure created an *Apprendi* error).

double jeopardy, were served, preventing the plain error in his indictment from affecting Doe's substantial rights.[12]

### d. Discretion

■■■ Even if Doe's substantial rights were violated by the error in the indictment, we would decline to exercise our discretion to remedy the error. Because Doe demonstrated—in his cooperation agreement, at his plea hearing, and at sentencing—full awareness of the potential sentencing implications of his guilty plea, we do not believe that the fairness, integrity, or public reputation of judicial proceedings were affected by the indictment error in this case.

## C. Proved Beyond a Reasonable Doubt

The second aspect of Doe's challenge to his sentence arises from the *Apprendi/Thomas* requirement that drug quantity, when raising punishment beyond the statutory maximum for an offense involving an indeterminate amount of drugs, must be submitted to a jury for a finding beyond a reasonable doubt.[13]

### 1. Failure to properly establish drug quantity was an error.

■■■ Because Doe plead guilty to the crimes charged in his indictment, drug quantity was not found beyond a reasonable doubt by a jury. Furthermore, as Doe's indictment did not properly charge drug quantity, the fact of his plea alone cannot be construed to convey an admission of drug quantity. Any findings regarding drug quantity at sentencing would have been made under the preponderance of the evidence standard normally governing sentencing considerations.[14] Thus, the judge's sentencing decisions cannot be construed as findings beyond a reasonable doubt and in any event were not findings by a jury.[15] Based on these observations,

---

12. We recognize that a defendant has a Fifth Amendment right to grand jury indictment. *See Pirro,* 212 F.3d at 92. Unfortunately, the parenthetical reference to quantity in Doe's indictment provides little information as to the grand jury's quantity conclusions. Although the mention of § 960(b)(1)(B)(ii) reflects selection of 5 kilograms of cocaine as the proper level at which to seek punishment, it is unclear whether or not the grand jury made specific findings on the drug quantities involved in this case. Nevertheless, Doe was aware of the conduct for which he was prosecuted, importation of drugs between July 16, 1996 and July 22, 1996, thus protecting him from double jeopardy, and had notice adequate to allow him to prepare a defense or plea. *See Dhinsa,* 243 F.3d at 667; *Pirro,* 212 F.3d at 92. We find, therefore, that because Doe received the benefits of notice of quantity that the indictment should have provided, the error in the indictment did not affect his substantial rights. *See Cotton,* 122 S.Ct. at 1785 (finding plain error review applicable to omission of drug quantity from indictment).

13. For the reasons outlined in section II.B.I *supra,* we find *Thomas's* rulings under 21 U.S.C. § 841 applicable to our continued interpretation of 21 U.S.C. § 960 in this case.

14. As Doe was sentenced on the same day as *Apprendi* issued, the district court reasonably believed the preponderance standard should apply to all findings, including any made as to drug quantity.

15. Judge Johnson sentenced Doe to 262 months in prison in line with the recommendation of the amended PSR that included the drug quantities revealed during Doe's testimony at the Camancho trial as well as Doe's statements to government agents and the testimony of other Camancho trial witnesses. In assigning Doe's sentence, however, Judge Johnson stated only that he imposed Doe's sentence "because of the crimes that have been committed; also because of the testimony adduced at the Fatico hearing." Neither of these references provide any grounds for suspecting a reasonable doubt finding. Although the imposed sentence was above the statutory maximum for offenses involving indeterminate drug quantities, implying that the court must have found at least five kilograms of cocaine involved in the crime of conviction,

it appears that Doe's sentence was not imposed after a finding on drug quantity by a jury beyond a reasonable doubt, creating error under the *Apprendi/Thomas* standard. This Court has recently found, however, that in a guilty plea setting, error may be avoided even absent a fact-finder's beyond a reasonable doubt conclusion as to drug quantity if the defendant has given an "allocution that settles the issue of drug quantity." *United States v. Yu*, 285 F.3d 192, 198 (2d Cir.2002).

In *Yu*, this Court considered a challenge under *Apprendi* to a sentence from a defendant who, while pleading guilty to an indictment that properly alleged drug quantities, refused to allocute as to quantity at his plea hearing. *Id.* Without a plea agreement or any stipulation as to drug quantity, Yu pleaded guilty to a three count indictment for conspiring to distribute and possessing with intent to distribute heroin. At his plea allocution, Yu was advised of the mandatory minimum sentences he could face on each count as determined by the drug quantities involved in his crimes and his prior felony conviction. *Id.* at 195. Although Yu pleaded guilty, he refused to allocute as to the quantities of drugs involved, explaining that while he was willing to admit his role in the distribution conspiracy, he preferred to have the weight of the drugs determined at sentencing. *Id.* Yu received a sentence of 240 months, the mandatory minimum level established in 21 U.S.C. § 841(b)(1)(A) based on the quantity of drugs involved in Yu's crime and his prior felony conviction.

Judge Johnson did not expressly mention drug quantity, nor did he indicate that he had made findings by any standard other than the preponderance of the evidence standard required before release of the *Apprendi* decision.

After the Supreme Court issued its decision in *Apprendi*, Yu appealed his sentence challenging the use of the mandatory minimum sentence absent a beyond a reasonable doubt finding on drug quantity. In vacating and remanding Yu's sentence, this Court held that "[a]ny sentence under [the quantity-specific penalty provisions of 21 U.S.C. § 841(b)(1)] must be based either on an allocution that settles the issue of drug quantity or on a finding as to that issue by a fact-finder applying a reasonable-doubt standard." *Id.* at 198. Although the Court concluded that no beyond a reasonable doubt finding had been made, it refused to simply order the district court to resentence Yu under 21 U.S.C. § 841(b)(1)(C), the penalty provision for undetermined drug quantities, because the indictment to which Yu had plead had specifically identified drug quantities. *Id.* at 198 ("Yu is not entitled to plead guilty to an indictment charging a violation of Sections 841(b)(1)(A) and (B) and then be sentenced under Section 841(b)(1)(C), as he would have been if a jury had decided the drug quantity issue in his favor."). Instead, the Court vacated and remanded the sentence, leaving to the district court the determinations of, inter alia, whether Yu should be allowed to withdraw his plea, whether the government would acquiesce to a sentence under the unquantified provisions of 21 U.S.C. § 841(b)(1)(C), or whether Yu would seek a jury trial on the quantity issue. *Id.*

In light of the *Yu* decision, we examine Doe's plea allocution to determine whether Doe's allocution "settle[d] the issue of drug quantity" so as to avoid a finding of error on appeal.[16]

16. Yu's *Apprendi*-based challenge "depend[ed] on the proposition that *Apprendi* is violated when a judge's finding triggers a mandatory minimum sentence that is less than the maximum penalty provided for by the penal statute but that exceeds the otherwise-applicable sen-

### a. The plea allocution

█ In his cooperation agreement, Doe agreed to plead guilty to Count One as follows in relevant part:

1. The defendant will plead guilty to Count One of the above-captioned indictment charging him with conspiring to import cocaine into the United States, in violation of 21 U.S.C. § 963. The count carries the following statutory penalties:

   a. Maximum term of imprisonment: life

      (21 U.S.C. § 960(b)(1)(B)(ii)).

   b. Minimum term of imprisonment: 10 years

      (21 U.S.C. § 960(b)(1)(B)(ii)).

   c. Minimum supervised release term: 5 years, maximum supervised release term: life....

      (21 U.S.C. § 960(b)(1)(B)(ii)).

   d. Maximum fine: $4,000,000

      (21 U.S.C. § 960(b)(1)(B)(ii)).

During the plea hearing, Doe acknowledged in response to the judge's questions the terms of imprisonment potentially attached to his offenses—penalties arising from the quantity-specific provisions of § 960(b)(1)(B)(ii). Doe did not, however, admit to or otherwise specifically address drug quantities in his plea allocution. Despite his acknowledgment of the quantity-specific punishments assigned by 21 U.S.C. § 960(b)(1)(B)(ii) to importation of 5 kilograms or more of cocaine, Doe did not make any statements on drug quantity related to his own indicted crime. Without discussion of quantity relating specifically to Doe, Doe's allocution simply did not "settle[ ] the issue of drug quantity" as *Yu* requires. *Yu*, 285 F.3d at 198. Even though Doe, unlike Yu, did not attempt to reserve the drug quantity issue for debate before the sentencing judge, this Court finds that the absence of direct reference to drug quantity in Doe's allocution prevents the allocution from "settl[ing] the issue of drug quantity" for Doe's plea. Since Doe's plea allocution did not "settle" drug quantity, and since, as we concluded above, drug quantity was not found beyond a reasonable doubt by a jury, his sentence under 21 U.S.C. § 960(b)(1)(B)(ii) is in error.

### 2. The error is plain.

█ Having concluded that the district court erred by imposing a sentence pursuant to § 960(b)(1)(B)(ii) in excess of the statutory maximum for unquantified drug offenses without a stipulation, allocution, or determination of drug quantity beyond a reasonable doubt, we find the error plain in light of our recent decisions in *Thomas* and *Yu*. *Yu*, 285 F.3d at 198; *Thomas*, 274 F.3d at 673.

tencing range under the federal Guidelines." 285 F.3d at 197. Although at this time neither *Yu*, nor the case on which it relied for acceptance of the above-stated proposition, *United States v. Guevara*, 277 F.3d 111 (2d Cir.2001), has been expressly overruled, we recognize that the Supreme Court's recent decision in *Harris v. United States*, —— U.S. ——, 122 S.Ct. 2406, 2420, 153 L.Ed.2d 524 (2002), finding the imposition of a mandatory minimum sentence under 18 U.S.C. § 924(c) not subject to *Apprendi* analysis, potentially undermines both these holdings. Because we find here that Doe did not give an allocution settling drug quantity that would satisfy the *Yu* standard for reasonable doubt findings in the plea setting, our decision in this case is in no way dependant on the continued validity of *Yu's* precedential value. *See Thomas*, 274 F.3d at 671 (noting under analysis of the effect of the error on the fairness of judicial proceedings that Thomas "did not stipulate *or allocute to* the drug quantity used to enhance his sentence," emphasis added, suggesting that an allocution might serve to satisfy the *Apprendi* standard). While we consider the potential impact of *Yu's* plea allocution analysis on this case, we do not rely on its holding in finding that no reasonable doubt finding that would satisfy *Apprendi* was made here.

### 3. *The error affects substantial rights.*

■ As we have discussed above, *Apprendi* and *Thomas* have established Doe's constitutional right to have the drug quantity which would invoke a sentence under 21 U.S.C. § 960(b)(1)(B)(ii) determined by a jury under the beyond a reasonable doubt standard. Doe could, of course, waive that right by entry of a guilty plea during which he stipulated or allocuted to drug quantity. However, at the time of the plea in this case, neither *Apprendi* nor *Thomas* had been decided and the courts had universally treated the graduated penalty provisions of 21 U.S.C. § 960 as sentencing provisions rather than as elements of the crime. Nothing in the plea allocution or the sentencing in this case suggests that Doe was aware of and waived his right to beyond a reasonable doubt proof as to drug quantity. It is possible that he acknowledged the applicability of a ten year-to-life sentence believing that the government only had to prove quantity to the judge by a preponderance of the evidence (which was done and not contested by Doe). The result, however, was an increase in the sentence of imprisonment of almost two years. We conclude that under the circumstances, Doe's substantial rights have been affected.

### 4. *Discretion*

■ Unlike the error in Doe's indictment, we find that the error in Doe's sentence should be noticed and corrected at this stage because failure to correct it would seriously affect the fairness and public reputation of judicial proceedings. *Apprendi* and its progeny place a new burden on the government to treat as elements of a crime anything that may extend a defendant's sentence beyond a statutory maximum sentence. To allow a sentence even 22 months beyond the statutory maximum to remain in place in face of *Apprendi* and this Court's applications of *Apprendi* in *Thomas* and *Yu* would demonstrate a disregard for the constitutionally-derived protections given to a defendant by *Apprendi* and *Thomas*, undermining the fairness of the proceedings. After *Apprendi* and *Thomas*, a defendant has a constitutional right to have drug quantity that will raise his sentence beyond the otherwise applicable statutory maximum established by a jury beyond a reasonable doubt.

#### a. *In the absence of "overwhelming" evidence of drug quantity, we will correct the error.*

After this Court heard oral argument in this case, the Supreme Court issued a decision in *United States v. Cotton* applying plain error review to the appeal of defendants sentenced under 21 U.S.C. § 841(b)'s quantity based provisions, rather than under § 841(c) for unquantified offenses, despite the omission of drug quantity from their indictment. 122 S.Ct. at 1785. In reversing the Fourth Circuit's conclusion that the failure to charge drug quantity in the indictment deprived the court of jurisdiction to impose a sentence above the statutory maximum for offenses involving an indeterminate amount of drugs, the Court found the evidence of drug quantity that had been presented at trial to be both "overwhelming" and "essentially uncontroverted." *Id.* at 1786–87. The Court noted that faced with this evidence (including physical evidence collected from the residences and rooms occupied by the defendants) the grand jury that charged the defendants with conspiracy to possess with intent to distribute drugs "[s]urely ... would have also found that the conspiracy involved at least 50 grams of cocaine base." *Id.* at 1786. In light of this overwhelming evidence, the Court found that the sentence under 21 U.S.C. § 841(b) did not threaten the "fairness, integrity, and public reputation of judicial

proceedings" so as to require action to correct the plain error. *Id.* at 1785. The Court noted that Congress had designed the drug statutes to punish most severely those who had most harmed society by distributing large quantities of drugs. *Id.* It concluded that "the real threat ... to the fairness, integrity, and public reputation of judicial proceedings would be if respondents, despite the overwhelming and uncontroverted evidence that they were involved in a vast drug conspiracy, were to receive a sentence prescribed for those committing less substantial drug offenses because of an error that was never objected to at trial." *Id.* at 1786 (internal quotation omitted).

While we agree with the Supreme Court that Congress provided graduated penalties in 21 U.S.C. § 841(b), and presumably in § 960(b), in order to ensure that large-scale drug operators received greater punishments than minor dealers, we do not believe that Congress or the Court intended these greater punishments to fall upon defendants the breadth of whose activities was not charged in an indictment and proved beyond a reasonable doubt as *Apprendi* and *Thomas* guarantee where the evidence against the defendants falls below the "overwhelming" and "essentially uncontroverted" standard that *Cotton* applies.

In the case before this Court, we cannot find the evidence against Doe sufficient to meet *Cotton's* deservedly high standard. The evidence of drug quantity that appears from the record on appeal is summarized in the government's letter seeking to amend the PSR. The evidence derives from Doe's testimony at the Camancho trial, the testimony of other Camancho trial witnesses, and Doe's statements to government agents. Even ignoring the complications arising from the fact that the testimony in question was in a proceeding

at which Doe was a witness for the government against a co-conspirator rather than a defendant addressing the evidence on his own behalf, this evidence does not meet *Cotton's* "overwhelming" test. Although we do not have any direct contradiction of the evidence, we note that the testimony from the Camancho trial indicated drug quantities related to the importation of drugs between 1993 and "late 1995" or "early 1996." Doe's indictment, however, covered only an approximate six-day period in July, 1996, from July 16, 1996—July 22, 1996. We believe we would stretch *Cotton* too far to find "overwhelming" as evidence of quantity involved in drug deals conducted during one week in July, 1996, reports of amounts imported over a much more extensive three-year period ending approximately six months before the time in question. Further, we note that we do not have, as *Yu* suggests, statements from the plea allocution that could provide "uncontroverted" evidence that Doe was in fact responsible for the quantities of drugs for which he was sentenced in the court below. Absent such evidence, we cannot, in light of *Cotton*, allow Doe to be sentenced above the statutory maximum for offenses involving indeterminate drug quantities. While we find that *Cotton* clearly governs plain error evaluation of cases in which, although drug quantity was not charged in the indictment or found by the jury, the evidence against the defendant for the crime charged was overwhelming as to drug quantity, we will not apply its rule to a case in which drug quantity was not only not charged in the indictment or found by the jury, but was further not "overwhelming[ly]" established by the evidence accumulated during the course of the district court proceedings.

Respecting the full force, and the full prosecutorial burden, of *Apprendi, Thomas*, and their progeny, and finding this case distinguishable from one in which

"overwhelming" evidence ensures no injustice has been done, we choose to notice the plain error in Doe's sentence under § 960(b)(1)(B)(ii) and to vacate and remand the sentence to the district court.

## III.

In light of these conclusions, we remand for resentencing under the statutory maximum for offenses involving an indeterminate amount of drugs, § 960(b)(3), based on our conclusions that drug quantity was not charged in the indictment, proved beyond a reasonable doubt, or supported by evidence sufficiently "overwhelming" to remove the need for further proceedings to ensure a just and fair sentence. We need not, as in *Yu*, remand for proceedings broader than resentencing under the indeterminate quantity provision of 21 U.S.C. § 960(b)(3), because unlike Yu, Doe was charged under an indictment that did not allege quantity. Thus, allowing Doe to be sentenced under 21 U.S.C. § 960(b)(3) does not allow him to "plead guilty to an indictment charging a violation of [a quantity-based offense] and then be sentenced under the [indeterminate quantity provision]." *Yu*, 285 F.3d at 198. Instead, our remand for resentencing under § 960(b)(3), consistent with our remand in *Thomas, see* 274 F.3d at 673, allows Doe to be sentenced for exactly that charge to which he pled, conspiracy to import an unspecified amount of narcotics.

VACATED and REMANDED for resentencing under 21 U.S.C. § 960(b)(3); term of imprisonment not to exceed twenty years.