### UNITED STATES of America, Appellee–Cross–Appellant,

v.

**Raul Antonio CORDOBA–MURGAS, a/k/a Strawberry, Luis E. Cordoba–Murgas, a/k/a Sealed Defendant #2, a/k/a Negro, a/k/a, Carlos, Luis A. Todd–Murgas, a/k/a Sealed Defendant #3, a/k/a Little Louie, Appellants–Cross–Appellees,**

**Luis A. Murgas, a/k/a Sealed Defendant #1, a/k/a Big Louie, a/k/a Barosa, Ruben A. Todd–Murgas, a/k/a Sealed Defendant #5, Jose C. Dominguez, a/k/a Sealed Defendant #6, a/k/a Pachito, Gilberto Arce, a/k/a Sealed Defendant #7, a/k/a Luigi Santiago, Jason Jones,**

---

a/k/a Sealed Defendant #8, Tiffany Gaudinot, a/k/a Sealed Defendant #10, Tricia Irving, a/k/a Sealed Defendant #11, and Dennis J. Calandra, Jr., Defendants,

Vincinte Rogers, a/k/a Sealed Defendant #9, a/k/a Mr. Santos, Ruben A. Todd–Murgas, a/k/a Sealed Defendant #5, Gilberto Arce, a/k/a Sealed Defendant #7, a/k/a Luigi Santiago, and Cesar A. Todd–Murgas, a/k/a Sealed Defendant #4, a/k/a Tony, a/k/a Pepita, Defendants–Appellants.

Nos. 98–1280, 98–1284, 98–1285, 98–1502, 99–1054, 99–1055, 99–1056, 99–1096.

United States Court of Appeals, Second Circuit.

Argued May 22, 2000.

Decided Dec. 5, 2000.

Daniel J. French, United States Attorney, Northern District of New York, Albany, NY, (Grant C. Jaquith, Supervisory

Assistant United States Attorney, of counsel), for Appellee–Cross–Appellant United States of America.

Robert G. Wells, Syracuse, NY, (Bruce R. Bryan, of counsel), for Appellant–Cross–Appellee, Raul Antonio Cordoba–Murgas.

Edward S. Zas, The Legal Aid Society Federal Defender Division Appeals Bureau, New York, NY, for Appellant Cross Appellee Luis E. Cordoba–Murgas.

William M. Borrill, Whitesboro, NY, (Linda M. Campbell, of counsel) for Appellant–Cross–Appellee Luis A. Todd–Murgas.

Angelo A. Rinaldi, Law Office of Angelo A. Rinaldi, Syracuse, NY, for Defendant–Appellant Ruben A. Todd–Murgas.

William D. Walsh, Syracuse, NY, (J. Scott Porter, of counsel) for Defendant–Appellant Cesar Todd–Murgas.

Richard P. Ferris, Law Office of Richard P. Ferris, Utica, NY, for Defendant–Appellant Gilberto Arce.

Stephen Lance Cimino, Syracuse, NY, for Defendant–Appellant Vincinte Rogers.

Before: LEVAL and SOTOMAYOR, Circuit Judges, and MURTHA, District Judge.*

MURTHA, District Judge:

### Background

This matter has been the subject of several written decisions in the district court, familiarity with which is assumed. *See, e.g., United States v. Murgas,* 31 F.Supp.2d 245 (N.D.N.Y.1998); *United States v. Murgas,* 177 F.R.D. 97 (N.D.N.Y. 1998). For the purpose of deciding the instant appeal, the Court sets forth the following salient facts:

From 1991 until their arrest in 1996, the defendants were involved in a large-scale drug distribution enterprise based in Rome, New York. Through its investigation, the government determined that the defendants, including appellants-cross-appellees Raul Antonio Cordoba–Murgas (hereinafter "Raul Cordoba"), Luis E. Cordoba–Murgas (hereinafter "Luis Cordoba"), and Luis A. Todd–Murgas (hereinafter "Luis Todd") were responsible for distributing large quantities of powder and crack cocaine throughout Oneida County, New York.

On March 21, 1996, a grand jury charged the defendants with a variety of drug offenses in an eight-count superseding indictment. Before trial, Luis Cordoba and Luis Todd pled guilty to the second count of the indictment which charged them with conspiracy to possess with intent to distribute and conspiracy to distribute powder and crack cocaine in violation of 21 U.S.C. § 846. Luis Cordoba also pled guilty to one charge of knowingly and intentionally possessing, with the intent to distribute, cocaine, in violation of 21 U.S.C. § 841(a)(1). On June 26, 1997, a jury convicted Raul Cordoba of participating in the drug conspiracy set forth in count two of the superseding indictment and to which Luis Cordoba and Luis Todd had previously pled guilty. *See* 31 F.Supp.2d at 248.

At sentencing, Judge Munson summarized the defendants' base offense levels under the U.S. Sentencing Guidelines as follows:

Through their drug enterprise, defendants were responsible for trafficking between fifteen and fifty kilograms of cocaine. Under the United States Sentencing Guidelines, their base offense level for this conduct is thirty-four. See U.S.S.G. § 2D1.1(c). Pursuant to U.S.S.G. § 2D1.2(a)(2), Luis Cordoba's base offense level is enhanced one level to thirty-five because his offense involved a minor. His base offense level is enhanced four more levels to thirty-

* The Honorable J. Garvan Murtha, Chief Judge, United States District Court for the District of Vermont, sitting by designation.

nine because he was an organizer or leader of criminal activity that involved five or more participants. See U.S.S.G. § 3B1.1(a). Absent any other adjustments, including the enhancements the government seeks, the Guidelines manual recommends as follows: (1) Raul Cordoba, with a criminal history category of one and a base offense level of thirty-four, faces 151 to 188 months imprisonment; (2) Luis Todd, with a criminal history category of three and a base offense level of thirty-four, faces 188 to 235 months imprisonment; and (3) Luis Cordoba, with a criminal history category of one and a base offense level of thirty-nine, faces 262 to 327 months imprisonment.

*Id.*

Prior to the defendants' sentencing, the government presented evidence suggesting their involvement in the January 12, 1995 murder of two individuals in Rome, New York. The government claimed that Raul Cordoba committed the murders when he and Luis Todd attempted to collect payment of a drug-related debt. The two allegedly acted at the behest of the enterprise's ringleader, Luis Cordoba.

Citing this "relevant evidence," the government asked Judge Munson to apply upward departures or adjustments under the Sentencing Guidelines. Specifically, as to Raul Cordoba, the government urged the court to apply an upward adjustment under U.S.S.G. §§ 2D1.1(d)(1) and 2A1.1. Section 2D1.1(d)(1) provides: "If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder)." Under § 2A1.1, Raul Cordoba's base offense would be forty-three, indicating life imprisonment.

As for Luis Cordoba and Luis Todd, and as an alternative ground for increasing the sentence of Raul Cordoba, the government relied on U.S.S.G. § 5K2.1 as providing a basis for the Court to increase the sentences by upward departure. Section 5K2.1 provides: "If death resulted, the court may increase the sentence above the authorized guideline range." Given all three individuals' base offense levels and criminal history categories, Judge Munson determined that the government's proposed upward departure "almost certainly" would result in sentences of life imprisonment for all three defendants. 31 F.Supp.2d at 249.

Apparently troubled by the prospect of imposing effective life sentences, Judge Munson, at the behest of the defendants and over the government's objection, determined that, before the alleged murders could trigger the requested sentence enhancements, the government must prove each defendant's involvement by clear and convincing evidence. *See id.* at 253–54. After an evidentiary hearing, Judge Munson concluded:

> The government has cataloged some evidence that defendants were responsible for the January 12, 1995 homicides of Jason Jacobs and Kelly Coss, but it is not enough. The court finds the evidence the government has adduced does not demonstrate defendants committed these murders. This decision hardly exonerates defendants: it only holds the government has not demonstrated defendants' involvement by the more rigorous clear and convincing standard. The government's request to set Raul Cordoba's base offense level at forty-three pursuant to U.S.S.G. §§ 2D1.1(d)(1) and 2A1.1 must be DENIED. The government's request for upward departures pursuant to U.S.S.G. § 5K2.1 for Luis Cordoba and Luis Todd, as well as its alternative request for a § 5K2.1 upward departure for Raul Cordoba, must be DENIED as well.

*Id.* at 257–58.

### Discussion

Although the parties have raised a number of arguments in the instant cross-

appeals, only the claims regarding the applicable standard of proof at sentencing require discussion. The government claims the district court erred by failing to apply a "preponderance of the evidence" standard when it considered relevant conduct at sentencing and determined the defendants' guideline offense levels. In their cross-appeal, defendants Raul Cordoba, Luis Cordoba and Luis Todd argue the district court correctly required the government to meet a higher standard of proof because of the dramatic effect the requested upward adjustment (for Raul Cordoba) and upward departure (for Luis Cordoba and Luis Todd) would have had on their sentences.

█ The Supreme Court has observed that the "preponderance of the evidence" is the generally applicable standard for a sentencing judge to employ when deciding the weight and effect to accord relevant, uncharged conduct at sentencing. *See, e.g., United States v. Watts,* 519 U.S. 148, 156–57, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997)(per curiam); *McMillan v. Pennsylvania,* 477 U.S. 79, 91, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). Likewise, the Sentencing Commission has stated that the "use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case." U.S.S.G. § 6A1.3, comment. Moreover, on multiple occasions, this Court has instructed that proof by a "preponderance of the evidence" is the applicable burden of proof when a sentencing judge is asked to assess disputed facts relevant to sentencing, such as the ones at issue in this case. *See, e.g., United States v. Ruggiero,* 100 F.3d 284, 290–91 (2d Cir.1996); *United States v. Gigante,* 94 F.3d 53, 55–56 (2d Cir.1996); *United States v. Concepcion,* 983 F.2d 369, 390 (2d Cir.1992).

While acknowledging this Circuit's instruction that disputed facts relevant to sentencing generally need only be established by a preponderance of the evidence,

Judge Munson relied on *United States v. Shonubi,* 103 F.3d 1085, 1089 (2d Cir.1997) to support his application of a higher standard in this case. *Murgas,* 31 F.Supp.2d at 253–54. The *Shonubi* opinion stated:

A guideline system that prescribes punishment for unconvicted conduct at the same level of severity as convicted conduct obviously obliges the courts to proceed carefully in determining the standards for establishing whether the relevant conduct has been proven. We have recognized the need for such care with regard to the basic issue of the degree of the burden of proof. Thus, though the Sentencing Commission has favored the preponderance-of-the-evidence standard for resolving all disputed fact issues at sentencing, U.S.S.G. § 6A1.3, p.s., comment., we have ruled that a more rigorous standard should be used in determining disputed aspects of relevant conduct where such conduct, if proven, will significantly enhance a sentence.

103 F.3d at 1089.

The statement in *Shonubi,* however, was merely dictum. In light of this Court's continual application of the preponderance of the evidence standard, it is incorrect to construe the *Shonubi* language as authorizing the use of a higher standard of proof here. Rather, the *Shonubi* statements are better understood as an expression of concern that, in certain cases, the enhancement of a sentence based upon a defendant's "relevant conduct," if done without regard to the weight of the evidence proving the relevant conduct, may result in a total term of incarceration which is excessive, inappropriate, and unintended under Sentencing Guidelines. *See Gigante,* 94 F.3d at 56 ("[T]he preponderance standard is no more than a threshold basis for adjustments and departures, and the weight of the evidence, at some point along a continuum of sentence severity, should be considered with regard to both upward adjustments and upward departures. With regard to upward adjustments, a sen-

tencing judge should require that the weight of the factual record justify a sentence within the adjusted Guidelines range .... Where a higher standard, appropriate to a substantially enhanced sentence range, is not met, the court should depart downwardly.")(emphasis omitted).

The district court also cited *United States v. Kikumura*, 918 F.2d 1084 (3d Cir.1990) to support its decision to apply the clear and convincing evidence standard. *See* 31 F.Supp.2d at 254. The *Kikumura* court expressed concern that, in some cases, establishing facts pertinent to sentencing but not resulting in conviction by a preponderance of the evidence "can create the potential for significant unfairness." *Kikumura*, 918 F.2d at 1099. This Circuit, however, has not adopted the holding of *Kikumura*. We believe the district court was required to employ the preponderance of the evidence standard rather than the "clear and convincing" standard. Accordingly, the sentences of Raul Cordoba, Luis Cordoba and Luis Todd must be vacated.

■ While we must remand for resentencing because of the district court's substitution of the clear and convincing standard in place of the mandated preponderance standard, we do not mean to imply that the court must sentence exactly as if the murders had been proved at the sentencing proceeding beyond a reasonable doubt. As the cited language of *Shonubi* and *Gigante* suggests, the factual finding by a preponderance of the evidence is a preliminary step susceptible to adjustment.

As the circumstances with respect to Raul Cordoba, on the one hand, and Luis Cordoba and Luis Todd, on the other, are slightly different, we will discuss them separately.

As to Raul Cordoba, the government sought a scheduled upward adjustment under U.S.S.G. § 2D1.1(d)(1). That Guideline instructs the sentencing court to apply U.S.S.G. § 2A1.1 if a victim was killed

under circumstances that would constitute murder under 18 U.S.C. § 1111. Guideline Section 2A1.1 prescribes a base offense level of 43, which calls for life imprisonment. Thus, at least as an initial step, if it found related offense conduct of murder by a preponderance of the evidence, the district court would be required to set the base offense level at 43.

■ We do not imply, however, that the court has no choice but to impose life imprisonment under the § 2D1.1(d)(1) adjustment if it finds murder by merely a preponderance of the evidence, and it has substantial doubts whether the defendant is in fact responsible. Under U.S.S.G. § 5K2.0, which quotes 18 U.S.C. § 3553(b), "the sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described'." We believe that under the combination of circumstances that may be present here, including (i) an enormous upward adjustment (ii) for uncharged conduct (iii) not proved at trial and (iv) found by only a preponderance of the evidence, (v) where the court has substantial doubts as to the accuracy of the finding, the Court would be authorized to depart downward from the scheduled adjustment by reason of this extraordinary combination of circumstances. *See Concepcion*, 983 F.2d at 389 (notwithstanding finding of relevant conduct, the district judge retains discretion to downwardly depart where the sentence would be dramatically increased by reason of the unconvicted relevant conduct); *see also Gigante*, 94 F.3d at 56 (same).

■ As to defendants Luis Cordoba and Luis Todd, the protocol is somewhat different. As to them, the government did not seek an upward adjustment that is scheduled by the Guidelines. Rather, it sought

departure under a Policy Statement set forth under U.S.S.G. § 5K2.1 by reason of the fact that "death resulted" from the defendants' crime. This Policy Statement does not instruct the court at which level to set the Guideline offense level. It merely specifies that "the court may increase the sentence above the authorized guideline range." To determine whether this Policy Statement is applicable, the court should use the preponderance of the evidence standard to determine whether death resulted. If the court finds by a preponderance of the evidence that death resulted, the court may depart upward. Because the questions whether to depart and if so, by how much, however, are largely left to the sentencing court's discretion, the court would remain free to determine on the basis of all the factors described above (plus any other relevant factors) whether to depart and if so, how far.

We thus vacate the sentences and remand for resentencing. The court should initially apply the preponderance standard to determine whether the adjustment specified in U.S.S.G. § 2D1.1(d)(1)(for Raul Cordoba) and the departure specified in § 5K2.1 (for Luis Cordoba and Luis Todd, and, in the alternative, for Raul Cordoba) are applicable. If the court finds they are, the court may then proceed to determine whether downward departure from the offense level prescribed by § 2A1.1 is appropriate for Raul Cordoba, and as to § 5K2.1, whether the court should depart upward, and if so, how far.

*Conclusion*

In addition to the government's appeal, the remaining defendants have raised a variety of arguments concerning various aspects of their respective convictions and sentences. We have reviewed these claims and find them to be without merit. The sentences of Raul Cordoba, Luis Cordoba and Luis Todd are hereby VACATED and REMANDED for resentencing consistent with

this opinion. The convictions of the remaining defendants are AFFIRMED.