### UNITED STATES of America

#### v.

**Luis A. MURGAS, a/k/a Big Louie, a/k/a/ Barosa; Luis E. Cordoba–Murgas, a/k/a/ Negro, a/k/a Carlos; Luis Antonio Todd–Murgas, a/k/a Little Louie; Cesar A. Todd–Murgas, a/k/a Tony, a/k/a Pepita; Raul Antonio Cor-**

doba–Murgas, a/k/a Strawberry; Ruben A. Todd–Murgas; Vincente Rogers, a/k/a Santos; Gilberto Arce, a/k/a Luigi Santiago; Jayson Jones; Dennis J. Calandra, Jr.; Tiffany Gaudinot; Tricia Irving, Defendants.

No. 95–CR–384(HGM).

United States District Court, N.D. New York.

May 26, 2004.

Hon. Glenn T. Suddaby, United States Attorney, Northern District of New York, Syracuse, NY (Grant Jaquith, Assistant United States Attorney, of counsel), for U.S.

Hon. Alexander Bunin, Federal Public Defender, Syracuse, NY (Lisa A. Peebles, Assistant Federal Public Defender, of counsel), for Defendant Luis E. Cordoba–Murgas.

William M. Borrill, Office of Corporation Counsel, Utica, NY (Linda M. Campbell, of counsel), for Defendant Luis Antonio Todd–Murgas.

Robert G. Wells, Syracuse, NY (of counsel), for Defendant Raul Antonio Cordoba–Murgas.

### MEMORANDUM—DECISION AND ORDER

MUNSON, Senior District Judge.

In accordance with the Second Circuit Court of Appeals' decision in *United States v. Cordoba–Murgas*, 233 F.3d 704 (2d Cir. 2000), the court has reopened the sentencing of defendants Raul Antonio Cordoba–Murgas ("Raul Cordoba"), Luis Antonio Todd–Murgas ("Luis Todd"), and Luis E. Cordoba–Murgas ("Luis Cordoba").

## BACKGROUND

This matter has been the subject of several written decisions, familiarity with which is assumed. *See United States v. Cordoba–Murgas,* 233 F.3d 704 (2d Cir. 2000); *United States v. Murgas,* 31 F.Supp.2d 245 (N.D.N.Y.1998); *United States v. Murgas,* 177 F.R.D. 97 (N.D.N.Y. 1998). As a common point of reference, the court summarizes the matter as follows. On March 21, 1996, a grand jury charged defendants with a host of drug offenses in an eight-count superceding indictment. Prior to trial, Luis Cordoba and Luis Todd pled guilty to the second count of the indictment, which charged them with conspiracy to possess with intent to distribute and conspiracy to distribute powder and crack cocaine in violation of 21 U.S.C. § 846. Luis Cordoba also pled guilty to one charge of knowingly and intentionally possessing with the intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). On June 26, 1997, a jury convicted Raul Cordoba of participating in the drug conspiracy set forth in count two of the superceding indictment to which Luis Cordoba and Luis Todd had previously pled guilty.

At defendants' sentencing, the court found that defendants were responsible for trafficking between fifteen and fifty kilograms of cocaine. Thus, under the United States Sentencing Guidelines ("Guidelines") § 2D1.1(c), defendants' base offense level was thirty-four. Because Luis Cordoba's offense involved a minor, pursuant to U.S.S.G. § 2 D1.2(a)(2), the court enhanced his base offense level to thirty-five. In addition, because Luis Cordoba was an organizer or leader of criminal activity that involved five or more participants, pursuant to U.S.S.G. § 3B1.1(a), the court enhanced his base offense level to thirty-nine. Thus, the court determined under the Guidelines that: (1) Raul Cordoba,

with a criminal history category of one and a base offense level of thirty-four faced 151 to 188 months imprisonment; (2) Luis Todd, with a criminal history category of three and a base offense level of thirty-four, faced 188 to 235 months imprisonment; and (3) Luis Cordoba, with a criminal history category of one and a base offense level of thirty-nine, faced 262 to 327 months imprisonment.

Prior to defendants' sentencing, the Government presented evidence suggesting that defendants were involved in the murder of Jason Jacobs and Kelly Coss in Rome, New York, on January 12, 1995. Based upon the evidence presented, the court found that: (1) Jacobs "was a regular customer of defendants' drug enterprise," and that it appeared very likely that he owed defendants drug money on the day he and Coss were murdered; (2) the defendants advanced inconsistent alibis and could not account for their whereabouts at the time of the murders; and (3) the testimony of Peter Russo-that while inmates at the Madison County Jail, Luis Todd told him (a) that Luis Cordoba had directed Raul Cordoba and Luis Todd to collect a drug debt, (b) that Raul Cordoba argued with Jason Jacobs as Luis Todd acted as a lookout and grabbed Coss when she walked in, and (c) that Raul Cordoba shot and killed both Jacobs and Coss-was "more likely than not credible." *United States v. Murgas,* 31 F.Supp.2d at 254–57.

The Government pressed the court to apply upward departures or adjustments under the Guidelines. *See* U.S.S.G. § 2D1.1(d)(1) and U.S.S.G. § 5K2.1, for Raul Cordoba and Luis Cordoba and Luis Todd, respectively. The court, however, determined that before the alleged murders could trigger the requested sentence enhancements, the Government must prove each defendant's involvement by clear and convincing evidence. The court

found that while the Government catalogued some evidence that defendants were responsible for the murders of Jacobs and Coss, it nonetheless failed to meet its burden under the clear and convincing standard. The court sentenced Raul Cordoba to 151 months' imprisonment to be followed by supervised release for five years, Luis Todd to 188 months' imprisonment to be followed by supervised release for five years, and Luis Cordoba to 262 months' imprisonment to be followed by supervised release for five years.

On appeal, the Court of Appeals for the Second Circuit vacated the sentences and remanded for re-sentencing holding that the court had failed to apply the appropriate standard to determine whether the adjustment specified in U.S.S.G. § 2D1.1(d)(1), for Raul Cordoba, and the departure specified in § 5K2.1, for Luis Cordoba and Luis Todd, and in the alternative for Raul Cordoba, were applicable.

On October 20, 2003, the court held a sentencing hearing. *See United States v. Maldonado*, 996 F.2d 598, 599 (2d Cir. 1993) ("When a sentence has been vacated, the defendant is placed in the same position as if he had never been sentenced."). At the hearing, the government called two witnesses to testify and moved to admit seven exhibits into evidence. Defendants objected to one of the exhibits, and the court received six of the exhibits and reserved decision as to the lone challenged exhibit.

## DISCUSSION

### I. The Applicable Standard and Burden of Proof: Preponderance of the Evidence

As prescribed by the Second Circuit's mandate, at sentencing, the court is to "apply the preponderance [of the evidence]

standard to determine whether the adjustment specified in U.S.S.G. § 2D1.1(d)(1) (for Raul Cordoba) and the departure specified in § 5K2.1 (for Luis Cordoba and Luis Todd, and, in the alternative, for Raul Cordoba) are applicable." *Cordoba–Murgas*, 233 F.3d at 710. Therefore, with respect to Raul Cordoba and the applicability of U.S.S.G. § 2D1.1(d)(1), the court's task is to determine whether under the preponderance of the evidence standard "a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111." *Id.* at 709. U.S.S.G. § 2D1.1(d)(1) states: "[i]f a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder)."[1] Title 18 U.S.C. § 1111 states in pertinent part,

> Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree. Any other murder is murder in the second degree.

With respect to Luis Cordoba and Luis Todd and the applicability of U.S.S.G. § 5K2.1, the court's task is to determine

---

1. Section 2A1.1 sets a base offense level of 43.

under the preponderance of the evidence standard "whether death resulted."[2] *Cordoba–Murgas*, 233 F.3d at 710.

## II.   Evidence Considered

In order to make these determinations, the court has applied the preponderance of the evidence standard to all of the evidence submitted in relation to the murders of Jacobs and Coss. The court has reconsidered its previous evidentiary findings as summarized above and considered the testimony and sworn statements of the two witnesses, Natalie Todd and Bernardino Cordero, called by the Government at the most recent sentencing hearing, as well as the summary of Carlos Galvez–Falconi's interview conducted by Investigator Lyle Baxter of the Oneida County Major Crimes Unit and Investigator Robert Masucci of the Rome Police Department. The defendants objected to the interview summary and asked the court to reject its admission. Having previously reserved decision as to defendants' objection, the court now overrules their objection and admits the interview summary into evidence. Nevertheless, the court finds that the additional testimony and evidence failed to add any further credible support to the Government's assertion that defendants were involved in the murders of Jacobs and Coss.[3]

## III.   Sentences

As the court previously observed, and with a degree of clairvoyance it might add, if the standard of proof were beyond a reasonable doubt, there was "very little" upon which a trial jury could convict "any one of the three [defendants] . . . . If the standard of proof [were] the much lower standard, that is by a fair preponderance of the evidence, [defendants] might easily get convicted, because that means just slightly over fifty percent . . . . [Defendants] may [at] some time in the future be faced with the lower standard because I could easily get reversed by the Circuit Court of Appeals". Dkt. No. 392, Sentencing Mins. at 54.

### A.   Raul Cordoba

■  With respect to Raul Cordoba, *under the preponderance of the evidence standard*, the court has reconsidered the evidence and determined that "a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111." Apart from the application of any evidentiary standard, however, the court still harbors substantial doubts as to

---

**2.**  U.S.S.G. § 5K2.1 states in part that "[i]f death resulted, the court may increase the sentence above the authorized guideline range."

**3.**  Natalie Todd testified as to two conversations she claimed to have overheard within the days following the murders of Jacobs and Coss, which generally implicated defendants. The court finds her testimony unreliable because of (1) her admitted use of marijuana on the night she allegedly heard defendants' incriminating conversation; (2) the inconsistencies between the sworn statement she made to law enforcement officers in 1995 in which she claimed to have no knowledge of the murders versus her recollection in 1999 as was recounted at the Sentencing Hearing on October 20, 2003.

Bernardo Cordero testified that he had been incarcerated with Luis Cordoba for four or five months yet labored mightily to identify him in the courtroom at the Sentencing Hearing. *See* Dkt. No. 478, Closing Argument of Luis Cordoba at 9. The court finds Cordero's testimony unreliable.

Carlos Galvez–Falconi never endorsed his interview summary and defendants have never had the opportunity to cross-examine him or the person who prepared the summary of his interview. *See* Dkt. No. 478, Closing Argument of Luis Cordoba at 10–11. Therefore, the court finds the interview summary unreliable.

whether Raul Cordoba is in fact responsible for the two murders. Nevertheless, having made such a finding, under U.S.S.G. § 2D1.1(d)(1), the court is obligated to apply U.S.S.G. § 2A1.1, which sets Raul Cordoba's base offense level at forty-three and provides a Guideline penalty of life imprisonment.

■■■■ Raul Cordoba was convicted of participating in the conspiracy to possess with intent to distribute and conspiracy to distribute powder and crack cocaine in violation of 21 U.S.C. § 846. Section 846 states that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." The statutorily prescribed maximum penalty for this offense is twenty years.[4] *See* 21 U.S.C. § 841(b)(1)(C). As noted above, Raul Cordoba's base offense level of forty-three provides a Guideline penalty of life imprisonment; however, U.S.S.G. § 5G1.1(a) conforms the Guideline sentence to the statutory maximum—240 months. Regardless, however, the court's determination carries with it: (1) an enormous upward adjustment (2) for uncharged conduct (3) not proved at trial and (4) found by only a preponderance of the evidence (5) where the court has substantial doubts as to the accuracy of the finding. Under this extraordinary combination of circumstances, the court is authorized to depart downward from the scheduled adjustment. *Cordoba Murgas*, 233 F.3d at 709. By reason of this extraordinary combination of circumstances, the court departs downward and sentences Raul Cordoba to be imprisoned for a term of 170 months.

The court notes that this sentence satisfies the Supreme Court's holding in *Apprendi v. New Jersey* that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 520 U.S. at 490, 120 S.Ct. at 2362–63. Here, while the court's factual finding under U.S.S.G. 2D1.1(d)(1) at least initially "expos[ed] ... defendant to a greater punishment than that authorized by the jury's guilty verdict," *see id.*, 530 U.S. at 494, 120 S.Ct. at 2365, the Second Circuit has held that the phrase "expose the defendant to greater punishment" refers "to the circumstances where a defendant who, by reason of the triggering facts of his offense is *sentenced* to a more onerous sentence than would have been allowed by law, but for those triggering facts." *United States v. Luciano*, 311 F.3d 146, 151 (2d Cir.2002) (emphasis added). The essence of *Apprendi*

> is that unless the triggering facts were found by a jury beyond a reasonable doubt, the defendant may not be sentenced more heavily than the maximum sentence allowed by the statute without regard to those triggering facts. Violation of *Apprendi* arises when the defendant is sentenced on the basis of a triggering fact not found by the jury to a sentence that exceeds the maximum that would have been applicable but for the triggering fact. If the defendant's sentence is within the otherwise applicable maximum, no violation of *Apprendi* has occurred, even though the defendant was sentenced under a statute that allows for a sentence that exceeds the otherwise applicable maximum.

*Luciano*, 311 F.3d at 151. The touchstone of the constitutional inquiry under *Appren-*

---

**4.** Raul Cordoba was neither convicted of nor pled guilty to conspiring to possess or distrib- ute a specific amount of cocaine and thus avoids application of 21 U.S.C. 841(b)(1)(A).

*di* is whether the sentence actually imposed based upon facts not found by a jury exceeds the otherwise applicable statutory maximum.

As noted above, Raul Cordoba's base offense level of forty-three provides a Guideline penalty of life imprisonment; however, U.S.S.G. § 5G1.1(a) conforms the guideline sentence to the statutory maximum, or 240 months. Not only does Raul Cordoba's sentence of 170 months fall within the otherwise applicable maximum under 21 U.S.C. 841(b)(1)(C), but it also falls within the Guideline imprisonment range, 151–188 months, as was calculated for the original offense. *Apprendi*'s prohibition does not apply here.

### B. *Luis Todd and Luis Cordoba*

■ With respect to Luis Todd and Luis Cordoba, under U.S.S.G. § 5K2.1, the court must determine under the preponderance of the evidence standard "whether death resulted" from their conduct. If the court so finds, in effecting the proper increases, the court "must give consideration to matters that would normally distinguish among levels of homicide, such as the defendant's state of mind and the degree of planning or preparation. Other appropriate factors are whether multiple deaths resulted and the means by which life was taken." *Id.* Section 5K2.1 does not indicate at which level the court is to set the Guideline offense level, but rather specifies that the court may increase the sentence above the authorized guideline range. The Second Circuit has also commented that "in the absence of an explicit finding that [defendant] 'intended' or 'knowingly risked' [the victim's] death, any upward departure under § 5K2.1 would be inappropriate." *United States v. Rivalta*, 892 F.2d 223, 232 (2d Cir.1989). Under the preponderance of the evidence standard, the court has reconsidered the evidence and determined that both Luis Todd and Luis Cordoba "knowingly risked" Jacobs' and Coss' deaths and that "death resulted" from their conduct. *See* U.S.S.G. § 5K2.1.

#### 1. Luis Todd

■ Luis Todd pled guilty to count two of the superceding indictment, which charged him with conspiracy to possess with intent to distribute and conspiracy to distribute powder and crack cocaine in violation of 21 U.S.C. § 846. In his written plea agreement, Luis Todd acknowledged that his participation in the conspiracy involved the distribution of more than fifteen but less than fifty kilograms of cocaine and stipulated to being subject to the corresponding statutory maximum penalties. Because Luis Todd pled guilty to count two of the superceding indictment, drug quantity was not found beyond a reasonable doubt by a jury. The Second Circuit has found, however, that "in a guilty plea setting, error may be avoided even absent a fact-finder's beyond a reasonable doubt conclusion as to drug quantity if the defendant has given 'an allocution that settles the issue of drug quantity.'" *United States v. Doe*, 297 F.3d 76, 89 (2d Cir.2002) (quoting *United States v. Yu*, 285 F.3d 192, 198 (2d Cir.2002)). Thus, while under *Apprendi, supra* and *United States v. Thomas*, 274 F.3d 655 (2d Cir.2001), a defendant has a constitutional right to have drug quantity determined by a jury under the reasonable doubt standard, a defendant could "waive that right by entry of a guilty plea during which he stipulated or allocuted to drug quantity." *Doe*, 297 F.3d at 91; *see also United States v. McLean*, 287 F.3d 127, 133 (2d Cir.2002) ("As long as the sentence imposed is not greater than the maximum penalty authorized by statute for the offense charged and (in cases involving a guilty plea) allocuted to by the defendant, a district court may consider drug quantity in determining a defendants

relevant conduct for sentencing pursuant to U.S.S.G. § 1B1.3(a), even if drug quantity has not been charged in the indictment as an element of the offense."). The court is satisfied that Luis Todd's written plea agreement in which he acknowledged both drug quantity and the corresponding statutory maximum penalties settles the issue of drug quantity under *Doe.*

■ Section 846 states that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." The statutorily prescribed maximum penalty for Luis Todd's offense is life imprisonment. *See* 21 U.S.C. 841(b)(1)(A). As noted above, Luis Todd's base offense level of thirty-four provides a Guideline imprisonment range of 188–235 months. While the court declines to depart above the authorized Guidelines range as it is authorized to do under U.S.S.G. 5K2.1, it elects to upwardly adjust the previously imposed sentence within the Guidelines range and sentences Luis Todd to be imprisoned for a term of 207 months. The court makes this upward adjustment in recognition of Luis Todd's role in the deaths Jacobs and Coss.

The court notes that this sentence satisfies the Supreme Court's holding in *Apprendi* that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. at 2362–63. Here, while the court's factual finding under U.S.S.G. 5K2.1[5] potentially "expos[ed] . . . defendant to a greater punishment than that authorized by the jury's

guilty verdict," *see id.,* 530 U.S. at 494, 120 S.Ct. at 2365, or as here, by defendant's plea agreement, the Second Circuit has held that the phrase "expose the defendant to greater punishment" refers "to the circumstances where a defendant who, by reason of the triggering facts of his offense is *sentenced* to a more onerous sentence than would have been allowed by law, but for those triggering facts." *United States v. Luciano,* 311 F.3d 146, 151 (2d Cir.2002) (emphasis added). Not only does Luis Todd's sentence fall within the statutorily prescribed maximum under 21 U.S.C. 841(b)(1)(A), but it also falls within the Guideline imprisonment range, 188–235 months, as was calculated for the original offense. *Apprendi*'s prohibition does not apply here.

### 2. Luis Cordoba

Luis Cordoba pled guilty to count two of the superceding indictment, which charged him with conspiracy to possess with intent to distribute and conspiracy to distribute powder and crack cocaine in violation of 21 U.S.C. § 846. He also pled guilty to one charge of knowingly and intentionally possessing with the intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). In his written plea agreement, Luis Cordoba acknowledged that his participation in the conspiracy involved the distribution of more than fifteen but less than fifty kilograms of cocaine and stipulated to being subject to the corresponding statutory maximum penalties. Because Luis Cordoba pled guilty to count two of the superceding indictment, drug quantity was not found beyond a reasonable doubt by a jury. The Second Circuit has found, however, "that in a guilty plea setting, error may be avoided even absent a fact-finder's

---

**5.** U.S.S.G. 5K2.1 leaves to the court's discretion at which level to set the Guideline offense level.

beyond a reasonable doubt conclusion as to drug quantity if the defendant has given 'an allocution that settles the issue of drug quantity.'" *Doe,* 297 F.3d at 89 (quoting *Yu,* 285 F.3d at 198). Thus, while under *Apprendi supra* and *Thomas supra,* a defendant has a constitutional right to have drug quantity determined by a jury under the reasonable doubt standard, a defendant could "waive that right by entry of a guilty plea during which he stipulated or allocuted to drug quantity." *Doe,* 297 F.3d at 91; *see also McLean,* 287 F.3d at 133 ("As long as the sentence imposed is not greater than the maximum penalty authorized by statute for the offense charged and (in cases involving a guilty plea) allocuted to by the defendant, a district court ·may consider drug quantity in determining a defendant's relevant conduct for sentencing ... even if drug quantity has not been charged in the indictment as an element of the offense."). The court is satisfied that Luis Cordoba's written plea agreement in which he acknowledged both drug quantity and the corresponding statutory maximum penalties settles the issue of drug quantity under *Doe.*

Section 846 states that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." The statutorily prescribed maximum penalty for Luis Cordoba's offense is life imprisonment. *See* 21 U.S.C. 841(b)(1)(A). As noted above, Luis Cordoba's base offense level of thirty-nine provides a guideline imprisonment range of 262–327 months. The court declines to depart above the authorized Guidelines range as it is authorized to do under U.S.S.G. 5K2.1, and instead it elects to maintain Luis Cordoba's prior sentence. The plain language of U.S.S.G. § 5K2.1

does not mandate an upward departure even upon a finding that death resulted. Therefore, the court sentences Luis Cordoba to be imprisoned for a term of 262 months. The court believes this is a just and fair sentence.

The court notes that this sentence satisfies the Supreme Court's holding in *Apprendi* that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. at 2362–63. Here, while the court's factual finding under U.S.S.G. 5K2.1 potentially "expos[ed] ... defendant to a greater punishment than that authorized by the jury's guilty verdict," *see id.,* 530 U.S. at 494, 120 S.Ct. at 2365, or as here, by defendant's plea agreement, the Second Circuit has held that the phrase "expose the defendant to greater punishment" refers "to the circumstances where a defendant who, by reason of the triggering facts of his offense is *sentenced* to a more onerous sentence than would have been allowed by law, but for those triggering facts." *Luciano,* 311 F.3d at 151 (emphasis added). Not only does Luis Cordoba's sentence fall within the statutorily prescribed maximum under 21 U.S.C. 841(b)(1)(A), but it also falls within the Guideline imprisonment range, 262–327 months, as was calculated for the original offense. *Apprendi*'s prohibition does not apply here.

## CONCLUSION

**WHEREFORE,** Raul Cordoba is to be imprisoned for a term of 170 months to be followed by a term of supervised release of five years; Luis Todd is to be imprisoned for a term of 207 months to be followed by a term of supervised release of five years; and, Luis Cordoba is to be imprisoned for

a term of 262 months to be followed by a term of supervised release for five years.

**IT IS SO ORDERED.**