24-85-cr
*United States v. Gonzalez*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of March, two thousand twenty-five.

PRESENT:
>JOHN M. WALKER, JR.,
>RICHARD C. WESLEY,
>JOSEPH F. BIANCO,
>>*Circuit Judges.*

---

UNITED STATES OF AMERICA,

>*Appellee,*

v.                                                              24-85-cr

STEVEN GONZALEZ, AKA UNC,

>*Defendant-Appellant.*

---

FOR APPELLEE:                          TIFFANY H. LEE, Assistant United States Attorney, *for* Michael DiGiacomo, United States Attorney for the Western District of New York, Buffalo, New York.

FOR DEFENDANT-APPELLANT:               JEREMIAH DONOVAN, Old Saybrook, Connecticut.

1

Appeal from a judgment of the United States District Court for the Western District of New York (Richard J. Arcara, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on December 28, 2023, is **AFFIRMED**.

Defendant-Appellant Steven Gonzalez appeals from the district court's judgment following his guilty plea to one count of conspiring to possess with intent to distribute and to distribute heroin, fentanyl, and acetyl fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. We assume the parties' familiarity with the underlying facts, procedural history, and the issues on appeal, which we reference only as necessary to explain our decision to affirm.

On June 12, 2019, Roman Lapp purchased approximately one gram of a mixture of heroin and fentanyl from Gonzalez on behalf of Lapp's friend, L.K. Lapp then transported the mixture to L.K.'s home, where they both consumed a "bump" of the narcotics in her basement. Soon after, Lapp left L.K. in the basement with the remaining drugs in order to run an errand. Later that evening, L.K. was found deceased in her basement from the combined effects of several substances, including lethal levels of fentanyl and acetyl fentanyl.

In the days following L.K.'s fatal overdose, Lapp was contacted and questioned by the Buffalo Police Department, at which point he falsely told law enforcement that he obtained the narcotics from Freddy Maldonado—a story he maintained until he eventually agreed to conduct a controlled call with the actual seller, Gonzalez. During that controlled call, Gonzalez encouraged Lapp to "stick to the same story that you've been telling them"; namely, that it was Maldonado who sold Lapp the drugs and not Gonzalez. App'x at 26.

On July 11, 2022, Gonzalez entered a guilty plea to a one-count superseding information charging him with conspiracy to possess with intent to distribute and to distribute heroin, fentanyl, and acetyl fentanyl. Pursuant to the plea agreement, the government reserved the right to argue at sentencing that a two-level increase for obstruction of justice under U.S.S.G. § 3C1.1 should apply. In addition, the government "reserve[d] the right to argue for an upward departure under Guidelines § 5K2.l (death policy statement) and Guidelines § 5K2.2 (physical injury policy statement), and for a non-Guidelines sentence outside the otherwise applicable Guidelines range, based on the June 12, 2019 death of L.K." *Id.* at 29.

After holding an evidentiary hearing pursuant to *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979), the district court found that the government had established, by a preponderance of evidence, that L.K.'s death had result from Gonzalez's narcotics distribution and that a nine-level upward departure under Section 5K2.1 was warranted. *United States v. Gonzalez*, No. 20-CR-60, 2023 WL 8430233, at *5–6 (W.D.N.Y. Dec. 5, 2023). The district court also determined that Gonzalez willfully obstructed the investigation by encouraging Lapp to maintain the false story regarding the drugs' source, and thus the two-level enhancement for obstruction of justice was warranted. *Id.* at *4–6. At sentencing, the district court calculated the applicable Guidelines range before any departures to be 70 to 87 months' imprisonment, but explained that the Guidelines range after the nine-level departure increased to 188 to 235 months. The district court then sentenced Gonzalez to 188 months' imprisonment followed by three years of supervised release.

On appeal, Gonzalez argues that the district court: (1) erred in finding that the drugs sold by Gonzalez caused the death of L.K. and abused its discretion by not fully considering the factors set forth in Section 5K2.1 in imposing the nine-level upward departure; and (2) erred in applying the obstruction-of-justice enhancement under Section 3C1.1.

**I.      U.S.S.G. § 5K2.1**

Gonzalez first asserts that the district court erred in concluding that the government proved by a preponderance of the evidence that L.K.'s death resulted from his conduct under Section 5K2.1.  We disagree.

Under Section 5K2.1, a sentencing judge may "increase [a] sentence above the authorized guideline range" if the judge finds that death resulted from the defendant's criminal conduct. U.S.S.G. § 5K2.1.  Section 5K2.1 further provides that "[l]oss of life does not automatically suggest a sentence at or near the statutory maximum"; that "[t]he sentencing judge must give consideration to matters that would normally distinguish among levels of homicide, such as the defendant's state of mind and the degree of planning or preparation"; and that "[o]ther appropriate factors are whether multiple deaths resulted, and the means by which life was taken." *Id.*  It also instructs that "[t]he extent of the increase should depend on the dangerousness of the defendant's conduct, the extent to which death or serious injury was intended or knowingly risked, and the extent to which the offense level for the offense of conviction, as determined by the other Chapter Two guidelines, already reflects the risk of personal injury." *Id.*  In addition, we have emphasized that "[a] district court should . . . take into consideration the degree of proof satisfied beyond a preponderance when exercising its discretion to decide whether and how much to depart." *United States v. McCray*, 7 F.4th 40, 49 (2d Cir. 2021).

As we explained in *United States v. Cordoba-Murgas*, 233 F.3d 704 (2d Cir. 2000), in first "determin[ing] whether [Section 5K2.1] is applicable, the court should use the preponderance of the evidence standard to determine whether death resulted," and if that standard is met, "the court may depart upward." *Id.* at 710.  However, we further emphasized that, "[b]ecause the questions whether to depart and if so, by how much . . . are largely left to the sentencing court's discretion,

4

the court would remain free to determine on the basis of all the factors described above (plus any other relevant factors) whether to depart and if so, how far." *Id.*

"We review the district court's factual findings at sentencing for clear error . . . ." *United States v. Cacace*, 796 F.3d 176, 191 (2d Cir. 2015) (per curiam) (internal quotation marks and citation omitted). A finding of fact is clearly erroneous only if, after reviewing all of the evidence, this Court is "left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985); *accord United States v. Cramer*, 777 F.3d 597, 601 (2d Cir. 2015). We review the extent of a district court's departure under the Guidelines for abuse of discretion. *United States v. Fuller*, 426 F.3d 556, 562 (2d Cir. 2005).

We find no clear error in the district court's factual determination that the government demonstrated "by a preponderance of the evidence that [Gonzalez's] conduct resulted in L.K.'s fatal overdose."[1] *Gonzalez*, 2023 WL 8430233, at *5. Based on the government's evidence at the *Fatico* hearing—including, *inter alia*, Lapp's testimony recounting the details of his purchase and transport of drugs provided by Gonzalez on the afternoon of L.K.'s death, photographic evidence of the drugs later consumed by both Lapp and L.K., and the undisputed medical examiner report stating L.K.'s cause of death as acute intoxication due to the combined effects of several drugs, including a lethal dose of fentanyl and acetyl fentanyl—there was sufficient evidence in the record to meet the government's burden on this issue.

Gonzalez also contends that the district court abused its discretion by failing to fully consider the factors set forth in Section 5K2.1 in opting for a nine-level upward departure. We

---

[1] As a threshold matter, Gonzalez argues that the district court should have applied a clear and convincing evidentiary standard, rather than a preponderance standard. However, as Gonzalez concedes, his argument is foreclosed by our binding precedent in *Cordoba-Murgas*, 233 F.3d at 710, which held that the applicable standard is preponderance of the evidence. *See United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004) (emphasizing that this Court is "bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of our Court or by the Supreme Court").

5

find this argument similarly unpersuasive. Applying the Section 5K2.1 factors, the district court acknowledged that "no evidence was presented that [Gonzalez] intentionally caused L.K.'s death" and that Gonzalez's conduct did not result in multiple deaths. *Gonzalez*, 2023 WL 8430233, at *6. Nevertheless, the district court found that the nine-level departure was appropriate based upon its balancing of other Section 5K2.1 factors, including that: (1) Gonzalez engaged in "extremely dangerous conduct in mixing heroin, fentanyl, and acetyl fentanyl together in undisclosed ratios" and he "sold his amalgamated product to Lapp and others without warning as to what proportion was fentanyl, a drug many times more powerful than heroin"; (2) "[Gonzalez] was well aware his business model created a risk of great harm, including fatal overdoses, to his customers"; and (3) "it is undisputed that he continued distributing heroin, fentanyl, and acetyl fentanyl for months after L.K.'s fatal overdose." *Id.* at *5–6. Based upon these facts, the district court concluded that "[Gonzalez's] intentional or reckless disregard for the health and safety of his customers warrants a significant departure." *Id.* at *6. Moreover, contrary to Gonzalez's suggestion, the district court also explicitly noted that it was "taking into consideration the degree of proof satisfied beyond a preponderance of the evidence" in determining that the nine-level upward departure was warranted. *Id.* Thus, there is no "mismatch" between the strength of the evidence presented and the court's "carefully selected departure."[2] *McCray*, 7 F.4th at 49.

---

[2] We also find no merit to Gonzalez's argument that the district court failed to consider, under Section 5K2.1, "the extent to which the offense level for the offense of conviction, as determined by the other Chapter Two guidelines, already reflects the risk of personal injury." U.S.S.G. § 5K2.1. As a threshold matter, we note that the district court quoted this factor in articulating the applicable legal standard and we have no reason to believe that the lack of an explicit discussion of this factor reflects a misapplication of the Section 5K2.1 factors, especially where Gonzalez made no argument in his written submission with respect to that factor. *Cf. United States v. Verkhoglyad*, 516 F.3d 122, 131 (2d Cir. 2008) ("At the outset, we reiterate that the law does not impose any rigorous requirement of specific articulation on sentencing judges with respect to their consideration of § 3553(a) factors. No robotic incantations are required to prove the fact of consideration, and we will not assume a failure of consideration simply because a district court fails to enumerate or discuss each § 3553(a) factor individually." (internal quotation marks and citations omitted)). In any event, it is apparent that, in this case, Gonzalez's offense of conviction did not sufficiently reflect conduct that causes the death of another person. Although Section 2D1.1 contains a specific

In sum, the district court acted well within its discretion in determining that Gonzalez's drug distribution, which resulted in L.K.'s death, warranted a nine-level upward departure under Section 5K2.1.

## II.     U.S.S.G. § 3C1.1

Gonzalez also challenges the district court's application of a two-level obstruction of justice adjustment under Section 3C1.1 of the Guidelines, arguing that the evidence was insufficient to establish:  (1) that the investigation was significantly obstructed or impeded by Gonzalez's conduct, or (2) that Gonzalez's conduct was an attempt to suborn perjury.  We are not persuaded by either argument.

Section 3C1.1 instructs district courts to increase an offense level by two levels if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and . . . the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense."  U.S.S.G. § 3C1.1.  "On review of a district court's decision to enhance a defendant's sentence for obstruction of justice, we accept the court's findings of facts unless they are clearly erroneous."  *United States v. Pena*, 751 F.3d 101, 105 (2d Cir. 2014) (per curiam) (internal quotation marks and citation omitted).  However, "[w]e review *de novo* a ruling that the established facts constitute obstruction of justice, giving due

---

provision for conduct resulting in death, which carries a base offense level of 38, *see* U.S.S.G. § 2D1.1(a)(2), the government took the position in the district court that "Section 2D1.1(a)(2) is not applicable . . . because it only applies to the 'offense of conviction,'" and the drug distribution that caused L.K.'s death was part of Gonzalez's relevant conduct rather than his offense of conviction.  App'x at 84. Given the inapplicability of Section 2D1.1(a)(2), the district court's upward departure in no way disregarded whether the risk of personal injury, or even a resulting death, was already reflected in the offense level for the offense of conviction.

deference to the district court's application of the guidelines to the facts." *Id.* (internal quotation marks and citation omitted).

Here, there was a sufficient evidentiary basis for the obstruction-of-justice enhancement. As an initial matter, the district court recognized that the record did not establish that Gonzalez concocted the false narrative that the drugs were purchased from Maldonado. *See Gonzalez*, 2023 WL 8430233, at *4. However, Lapp testified that he kept Gonzalez apprised as to what was happening in the investigation. Moreover, Lapp made a controlled call to Gonzalez, that was recorded and observed by law enforcement, on the same day that Lapp was scheduled to testify before the grand jury. During that call, after being told by Lapp that law enforcement did not believe the false narrative about Maldonado supplying the drugs leading to L.K.'s overdose, Gonzalez told Lapp to "stick to the same story." Special App'x at 9; App'x at 26, 168–73. Based on Lapp's testimony and the recording, the district court found:

> Defendant was aware that law enforcement and the U.S. Attorney's Office were investigating and pursuing the overdose death of L.K. Defendant stood to benefit from the false narrative that the narcotics that caused the overdose death came from [Maldonado]. He told Lapp to continue providing the false [Maldonado] story to the Government even when Lapp advised him that the Government did not find it credible. Accordingly, it is more likely than not that Defendant encouraged Lapp to continue lying to the Government to protect himself from the criminal consequences of his actions, making his obstruction willful and thereby satisfying the Guidelines criteria.

*Id.* at *5. We discern no clear error in the district court's factual findings. Moreover, based upon those factual findings, the district court had a sufficient legal basis to determine that Gonzalez's encouragement to Lapp to continue lying in the federal investigation satisfied the requirements of Section 3C1.1. *See* U.S.S.G. § 3C1.1 cmt. n.4(A) (stating that covered conduct includes "otherwise unlawfully influencing a co-defendant [or] witness . . . directly or indirectly, or attempting to do so"); *see also United States v. Reyes*, 718 F. App'x 56, 59 (2d Cir. 2018) (summary order) ("[B]ased on the plain language of [the defendant's] directions to [a co-

8

defendant] during their recorded August 20, 2014 prison telephone call, it was permissible for the district court to conclude by a preponderance of the evidence that [the defendant] willfully impeded the investigation into [the victim's] murder by encouraging [the co-defendant] to lie . . . .").

\* \* \*

We have considered the remaining arguments on appeal and conclude that they are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court