Ramon Emilio **RODRIGUEZ,**
Petitioner,

v.

**UNITED STATES of America,**
Respondent.

Nos. 04 Civ. 6916, 99 Cr. 0805.

United States District Court,
S.D. New York.

Sept. 28, 2009.

Ramon Emilio Rodriguez, Philipsburg, PA, pro se.

### *DECISION AND ORDER*

VICTOR MARRERO, District Judge.

## I. *BACKGROUND AND PRIOR PROCEEDINGS*

Petitioner Ramon Emilio Rodriguez ("Rodriguez") brought the instant motion pursuant to 28 U.S.C. § 2255 seeking to vacate, set aside or correct his sentence. Rodriguez pleaded guilty to one count of an indictment charging him with conspiracy to possess with intent to distribute in excess of five kilograms of cocaine. He was sentenced by the Honorable Shirley Wohl Kram on April 18, 2001 to 135 months of incarceration, the bottom of the applicable Sentencing Guidelines range, and five years of supervised release.

In response to the draft Presentence Investigation Report ("PSR"), Rodriguez, through counsel, argued that he was entitled to a four-level reduction in the offense level computation for his alleged minimal participation in the offense. He stated in

an objection to the PSR that he was recruited as a courier or spare driver to transport the shipment of drugs involved from New Orleans to New York, that he did not know the source of the shipment or where or how it was ultimately to be distributed, and that he had had no prior relationship with the person who contacted him.

In response, the Probation Department considered and rejected Rodriguez's objections on this ground. It noted that Rodriguez was recruited because he held the appropriate class of license to operate the tractor-trailer that was used to transport the drugs, that as security for payment due to the drivers Rodriguez and two co-conspirators retained possession of 15 kilograms of a total shipment of 170 kilograms of cocaine that they delivered in New York, and that, even if he did not know the full scope of the conspiracy or destination of the drugs, he completed his role in the offense.

At sentencing, Rodriguez's counsel reiterated the same objection to the PSR's failure to grant a reduction for a minor role in the offense, and Rodriguez himself requested an additional departure for exceptional family circumstances. Judge Kram rejected Rodriguez's requests, finding no basis for adjustment or departure on these grounds.

In the instant motion, Rodriguez asserts two grounds: that he was entitled to a two-level downward adjustment under the Guidelines as a minor participant, and that at sentencing he received ineffective assistance of counsel because his attorney failed to vigorously pursue the minor-role adjustment. Upon review of Rodriguez's motion, the PSR, the transcripts of Rodriguez's plea and sentencing, the instant application and other records of the case, the Court denies Rodriguez's motion.

## II. DISCUSSION

### A. MINOR ROLE ADJUSTMENT

Rodriguez argues that he is entitled to a minor role adjustment because he served only as a courier in the underlying transaction. Specifically, he asserts that he did not: own the drugs; finance any part of the offense; possess any decision-making authority in the operation; sell the drugs; or have any knowledge or understanding of the full scope and structure of the unlawful enterprise. He relies heavily on *United States v. Martinez*, No. 00 Cr. 1306, 2002 WL 1041318 (S.D.N.Y. May 22, 2002). However, as Rodriguez recognizes, under Second Circuit case law "a minor-role adjustment is not available merely on a showing that the defendant played a lesser role than his co-conspirators." *United States v. Kwok Ching Yu*, 285 F.3d 192, 200 (2d Cir.2002) (*quoting United States v. Rahman*, 189 F.3d 88, 159 (2d Cir.1999)) (internal quotation marks omitted). Rather, to qualify for such a reduction, the defendant's conduct must be "minor" as compared to the average participant in such a crime. *Id.* Accordingly, the Second Circuit has stressed that "assessment of the defendant's role in criminal activity is highly fact-specific." *United States v. Shonubi*, 998 F.2d 84, 90 (2d Cir.1993). For this reason, the Circuit Court has consistently underscored that a drug courier is not automatically entitled to a minor role adjustment grounded merely on the defendant's status as a courier. *See United States v. Garcia*, 920 F.2d 153, 155 (2d Cir.1990).

Rodriguez seeks to minimize his role in the conspiracy, arguing that he was uninformed of the details, was poorly compensated, and had a part with limited importance, duration or skill. The Court is not persuaded. Facts set forth in the PSR belie each of these contentions.

Rodriguez was recruited into the conspiracy not as an ordinary member with the very limited role of the typical courier, but because he possessed an important skill and attribute essential for the success of the entire enterprise: he possessed the proper motor vehicle license and ability to drive the tractor-trailer used for the major and sensitive operation of transporting 170 kilograms of drugs from New Orleans to New York. His involvement was not one of short duration, as in the more common minor-role courier cases, in which the offender simply hands over the packages containing the drugs to another person and thereby terminates his involvement, without ever knowing for certain what quantity or type of drugs the shipment entailed. Rather, the transaction in this case and Rodriguez's part in it were much more complex and extensive in relation to the average courier role.

According to the PSR, Rodriguez was asked to drive a tractor trailer from New Orleans to New York a few days before August 1, 1999. On that date, a confidential informant ("CI# 2") traveled to New Orleans and met with Rodriguez and his co-driver Melbin Garcia ("Garcia"), as well as Carlos Goiry ("Goiry") and other co-conspirators. The confidential informant made arrangements for Rodriguez and Garcia to take possession of the drugs from Goiry. (*See* PSR SI 18). Five days later, on August 6, Garcia and another co-conspirator, Edison Genao–Almanzar ("Genao–Almanzar") unloaded the 170 kilograms of cocaine from the tractor-trailer, turned over 155 kilograms of it to CI # 2 and retained custody of 15 kilograms until payment by CI # 2 of $170,000 as the charge for transporting the drugs from New Orleans. On August 9, Rodriguez, Garcia and Genao–Almanzar met with CI # 2 at a parking lot in Staten Island, New York to arrange payment by CI # 2 to Rodriguez, Garcia and Genao–Almanzar of $150,000 of the $170,000 agreed upon as the fee for transporting the drugs from New Orleans. Rodriguez, Garcia and Genao–Almanzar agreed to come back with the 15 kilograms of cocaine that they had retained as collateral. Soon after their return to the parking lot, on a signal from CI # 2, Rodriguez, Garcia and Genao–Almanzar were arrested. In the vehicle they used for this transaction, which reportedly belonged to Rodriguez, the law enforcement agents found 14 kilograms of cocaine.

These facts help place Rodriguez's role in the conspiracy in perspective, and shed light on his relationship to the other participants, the importance of his actions to the success of the venture, and the full extent of his awareness of the nature and scope of the enterprise. *See Shonubi*, 998 F.2d at 90. Rodriguez's involvement in the venture continued over a period of more than 10 days. While he asserts that he did not know of the drug quantities at the commencement of the transaction, Rodriguez conceded at his plea allocution, as the factual recitation above supports, that he later became aware that the shipment involved 170 kilograms of cocaine. The co-conspirators' retaining possession of 15 kilograms of the drugs for several days as collateral for payment of their services is far from typical of a minor courier's role. Moreover, for the purpose of obtaining payment and returning the retained drugs to CI # 2, the co-conspirators traveled in a vehicle belonging to Rodriguez. Finally, though Rodriguez stated that he actually received only $1,000 for his services, the PSR suggests that the agreed-upon payment for the drivers to transport the 170 kilograms of cocaine was $170,000, which sheds light upon the full magnitude and importance of the transaction to the enterprise.

On these facts, the Court finds that Rodriguez's role in the charged conspiracy was

not minor as compared to that of the average participant in drug conspiracies. *See Yu*, 285 F.3d at 200.

## B. *INEFFECTIVE ASSISTANCE OF COUNSEL*

 Rodriguez faults his counsel for not arguing more vigorously for a minor role adjustment at sentencing and for failing to obtain the reduction Rodriguez sought on that basis.

Rodriguez fails to establish any basis for a claim of ineffective assistance of counsel under the standard enunciated in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court finds that a fair assessment of counsel's performance in this case shows no evidence that the representation Rodriguez was provided in connection with his sentencing was deficient or that any professional errors counsel may have made were so serious as to deprive Rodriguez of a fair proceeding, or that, but for any such errors the result of the sentencing would have been different. *See id.* at 689, 698, 104 S.Ct. 2052.

Here, counsel did not merely make a cursory application for a minor role adjustment at sentencing, as Rodriguez contends. As the PSR establishes, counsel specifically objected to the failure of the draft PSR Sentencing Guidelines analysis to grant the minor-role adjustment on the very grounds Rodriguez raises in his instant petition. The final PSR considered, responded to and rejected those objections. Nonetheless, counsel did not accept the PSR's denial of his objection as final. At the sentencing, counsel again raised this point before the Court as defendant's only objection to the report. As part of the sentencing record, Judge Kram had before her the benefit of the PSR's recitation of the facts detailing the full extent of Rodriguez's involvement in the conspiracy, as well as counsel's discussion of the issue. Having heard the objection, Judge Kram, like the Probation Department, rejected it, finding no ground for an adjustment on this basis.

The Court finds nothing on this record to suggest that there was more counsel could have done to alter the outcome of Judge Kram's rejection of his request for a minor role adjustment, especially given the very weak factual foundation upon which it was grounded. Plausibly, recognition of the shaky factual support for the argument may have prompted a strategic decision by counsel not to press the issue further at sentencing. The view of counsel's performance as deficient that Rodriguez urges would raise the very concern that the *Strickland* Court cautioned against: allowing the "distorting effects of hindsight" to guide an assessment of counsel's representation in this case. *Id.* at 689, 104 S.Ct. 2052. For these reasons, the Court rejects Rodriguez's motion insofar as it claims ineffective assistant of counsel as well.

## III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 1) of defendant Ramon Emilio Rodriguez to vacate, set aside or amend his sentence pursuant to 28 U.S.C. § 2255 is DENIED.

The Clerk of Court is directed to close this case.

As Rodriguez has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue.

**SO ORDERED.**